597 So.2d 1276 (1992)
CITY OF BILOXI, Mississippi
v.
M.C. HILBERT.
No. 90-CA-0151.
Supreme Court of Mississippi.
April 8, 1992.
Kimberly G. Starks, Raymond D. Carter, Compton Crowell & Hewitt, Biloxi, for appellant.
Robert E. Farish, Jr., Biloxi, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the Court:
The City of Biloxi appeals from an order entered on January 10, 1990, by the Circuit Court of Harrison County, Second Judicial District, reversing and setting aside a decision by the Biloxi City Council approving the zoning application of Bill E. Shinn. The issues presented in this appeal deal with the jurisdiction of the circuit court following its remand to the City Council, the applicability of the enhanced voting provisions found in Miss.Code Ann § 17-1-17 (Supp. 1991), and whether the rezoning *1277 decision made by the Biloxi City Council was "fairly debatable," or arbitrary, capricious, discriminatory, and unlawful. We reverse and reinstate the decision of the Biloxi City Council.

I.
On December 5, 1986, the applicant for a zoning change, Bill E. Shinn, purchased approximately 2.9 acres of unimproved land from the City of Biloxi. This property is bounded on the west by Rosalie Marie Drive, on the north by the single family residential properties of Quave, Mock, and Hilbert, on the east by the single family residential properties of Skupien and Schena, and on the south by the West Biloxi Wastewater Treatment Plant. The property to the north includes a newly developed subdivision, Acadian Court, owned by the appellee, M.C. Hilbert. The original warranty deed from the City of Biloxi to Bill Shinn contained no restrictions or reservations save for the reservation unto the city of all oil, gas, and mineral rights.
On the date of Shinn's purchase, the 2.9 acres was zoned R-1A, single family residential, and was surrounded by other property zoned R-1A except for certain property owned by Shinn located west of Rosalie Marie Drive which was zoned M-S, Medical Services. Shinn owns and operates a nursing home at this location.
The West Biloxi Wastewater Treatment Plant was constructed in the fall of 1973 and was placed into service in the latter part of 1974. The comprehensive zoning ordinance presently in effect in the City of Biloxi was adopted in March of 1973. The City of Biloxi authorized the construction and operation of the treatment plant as a conditional use exception within the R-1A zoning district.
On April 30, 1987, Shinn made application to the City of Biloxi for a zoning change of the 2.9 acres from R-1A to M-S. On August 10, 1987, the City Council, following a public hearing conducted on July 27, 1987, adopted Resolution 323-87 which denied the zoning change in the wake of a finding "that the applicant's request fail[ed] to establish by clear and convincing evidence either a mistake in the original zoning, or a substantial change in the character of the neighborhood and an identifiable public need for the requested zoning change ..."
A related event surfaced approximately two weeks later on August 26, 1987, when the Mayor of Biloxi received a letter from the attorney representing the Harrison County Wastewater Management District informing the mayor that the scheduled expansion of the West Biloxi Water Treatment Plant in 1989 would "require either a 150 foot buffer zone around the plant property or, if such a buffer zone is not available, a waiver of the buffer zone requirement by adjacent landowners."
The attorney noted in this letter he had been advised by Shinn's lawyer that Shinn would grant such a perpetual waiver voluntarily if he were allowed by the city to construct a parking lot for his nearby nursing home on the property conveyed to him by the city. Shinn's attorney explained, however, that Shinn would decline to execute the waiver in the present state of things since the city had denied him a zoning variance for the parking lot. The city was asked to reconsider its posture concerning the Shinn zoning application since it could be costly if the District had to condemn an easement for a buffer zone from Shinn to accommodate the expected plant expansion.
Subsequently, on September 28, 1987, the City Council, meeting in executive session, reconsidered Shinn's application, and by a majority vote of 4 to 2 with one abstention, reversed its earlier position and approved the rezoning of Shinn's property from R-1A, single family residential, to M-S, Medical Service.
In reversing itself and adopting Ordinance 1503, the City Council concluded "[i]t ha[d] been proven clearly and convincingly that there was both a mistake in the original zoning of the property of Bill Shinn considered in Case No. 87-26, and that there has been a material change in character of the neighborhood as well as a public need for a transitional use or buffer area *1278 warranting a change in the zoning of said parcel; ... ."
On October 15, 1987, two weeks following reversal by the City Council of its original position, Shinn executed a waiver of the buffer zone requirements for wastewater treatment facilities and entered into a covenant "that now and hereafter the property above described of the undersigned shall constitute the necessary 150 foot buffer zone for all purposes, this covenant to run with the land in favor of the West Biloxi Treatment Plant property."
On October 8, 1987, a week prior to Shinn's execution of the waiver, M.C. Hilbert, one of several landowners protesting the change in classification from R-1A to M-S, filed a timely appeal to the circuit court of Harrison County. In his bill of exceptions Hilbert contended, inter alia: (1) that the action of the City Council was arbitrary, capricious, unreasonable, confiscatory, and constituted an abuse of discretion; and (2) the final vote on the zoning amendment was made over the protest of 20% or more of the property owners authorized by statute to object, and that, therefore, a favorable vote of two-thirds (2/3) was required to implement the change.
On November 28, 1988, the circuit judge remanded the matter to the city counsel for a factual determination of the applicability of the enhanced voting requirement of Miss. Code Ann. § 17-1-17 (Supp. 1991). On March 6, 1989, the City Council adopted Resolution 95-89 concluding that the enhanced voting requirement of § 17-1-17 was not applicable.
The circuit judge, sitting as an appellate court, entered final judgment on January 10, 1990. The court found the rezoning of the property from R1-A to M-S to be improper under the existing standard for rezoning and held the action of the City Council was "arbitrary, capricious and discriminatory." It further held the zoning amendment was adopted over the protest of 20% or more of the property owners who were authorized to object within the meaning and purview of § 17-1-17, thereby invoking the requirement of a two-thirds (2/3) majority vote of the City Council. Feeling aggrieved, the City of Biloxi perfected this appeal.

II.
The City of Biloxi contends the circuit court did not have jurisdiction over this matter because Hilbert, following remand, failed to file a second bill of exceptions appealing the findings made by the City Council in Resolution 95-89 which addressed the enhanced voting requirement. However, in his original bill of exceptions filed on October 8, 1987, Hilbert had claimed, inter alia, "the final vote on the said zoning amendment was made over the protest of twenty percent or more property owners who were authorized to object within the meaning of Section 17-1-17 and said vote did not constitute a favorable vote of two-thirds of all members of the legislative body." In its addendum to Hilbert's bill of exceptions, the City of Biloxi responded to and denied the allegations thus generating a bona fide question on the issue.
Moreover, the circuit court retained continuing jurisdiction over the matter. On November 28, 1988, the circuit judge remanded this cause to the Biloxi City Council after concluding the applicability of the enhanced voting requirement found in Miss. Code Ann. § 17-1-17 (Supp. 1991) could be outcome determinative. Specifically, he remanded the case "to the City Council for a determination of the number and percentage of eligible property owners who protested the subject zoning change of Bill E. Shinn and [ordered] that a report of its findings and conclusions be filed with the Clerk of the Court to become part of the record of this cause."
On March 6, 1989, the City Council adopted Resolution 95-89 which stated that the council had again reviewed the matter and was of the opinion that an insufficient number of objectors filed written objections to the zoning change in order to invoke the two-thirds voting majority required by § 17-1-17. This finding was filed with the circuit clerk on March 10, 1989.
On October 3, 1989, the circuit court found it had "continuing jurisdiction" of *1279 the matter when it sustained a second suggestion of record diminution filed by Hilbert, and denied a motion to dismiss filed by the City of Biloxi. On January 10, 1990, after examining the record and finding it complete, the court pronounced final judgment.
It is clear to us the order issued on November 28th remanding the cause to the City Council was not intended to constitute a final judgment contemplated by Miss. Code Ann. § 11-51-75 (1972); rather, the circuit court, sitting as an appellate court, retained jurisdiction pending record expansion and supplementation.
Our own rules of appellate procedure embody this concept. Miss.Sup.Ct.R. 14(b) gives this Court the authority to remand a case on appeal to the trial court for further development and determination of issues of fact.

(b) Finding of Fact by the Trial Court. In the event this Court so directs, the trial court may determine all issues of fact which may arise out of any appeal submitted to the trial court for a determination, and which may be necessary for the disposition of cases on appeal to this Court.
Although we ultimately hold the remand in this case was unwarranted, such a procedure raises no jurisdictional barriers. A circuit court, sitting as an appellate court, enjoys the same authority to remand a case to an inferior body for record supplementation or a factual determination while at the same time retaining jurisdiction over both the parties as well as the subject matter.

III.
The circuit court also held that the two-thirds (2/3) majority voting requirement of Miss. Code Ann. § 17-1-17 (Supp. 1991) was applicable, and because the rezoning decision did not receive two-thirds approval of the council, a reversal of that decision was warranted. The relevant part of § 17-1-17 provides as follows:
In case of a protest against such change signed by the owners of twenty percent (20%) or more, either of the area of the lots included in such proposed change, or of those immediately adjacent to the rear thereof, extending one hundred sixty (160) feet therefrom or of those directly opposite thereto, extending one hundred sixty (160) feet from the street frontage of such opposite lots, such amendment shall not become effective except by the favorable vote of two-thirds (2/3) of all the members of the legislative body of such municipality or county.
The council concluded that the enhanced voting requirements of § 17-1-17 did not apply because:
1. [T]he written objections filed do not state that they are filed by a property owner, nor do they state the distances from the front or rear of the applicant's property in which said property owners allegedly reside;
2. Insufficient evidence was presented by the objectors from which a determination could be made that the owners of twenty percent (20%) or more of the area of lots immediately adjacent to the rear of applicant's property and extending one hundred sixty (160) feet therefrom objected in writing;
3. [E]ven if all of the objectors were, in fact, property owners, the evidence submitted shows that less that [sic] twenty percent (20%) of those situated to the front or rear of the applicant's property as defined by § 17-1-17, objected in writing.
In the face of the council's holding, the circuit court concluded as follows:
The Court ... finds that of two properties located immediately adjacent rear of the subject property, the Skupien property has 64.5 feet of common boundary with the subject property and the Schena property has 164.5 feet of common boundary. Both properties extend Easterly 130 feet to Greenwood Drive. The Court concludes that the Skupien property represents 28.2 percent of the area to the rear of the subject property within the meaning of Section 17-1-17, thereby invoking the requirement of a two-third vote approval of the City Council to amend the zoning.
*1280 In interpreting this part of section 17-1-17, we have declared that the burden rests upon the party relying on this provision to affirmatively prove that twenty percent (20%) or more of the protesting landowners fit within the class of landowners outlined in the statute; and this showing must be made before the local governing body and not for the first time on appeal. Tindall v. City of Louisville, 338 So.2d 998, 999 (Miss. 1976); Board of Super. of Washington Co. v. Abide Bros., Inc., 231 So.2d 483, 485 (Miss. 1970). It seems clear that the first and second reasons of the City Council, set forth above, are premised on this requirement.
Nothing in the record indicates that any of the protestors timely sought to invoke the requirements of section 17-1-17. The applicability of section 17-1-17 was not raised until the appeal was taken to circuit court. In its order remanding to the council on this point, the circuit court notes that "the record contains only a brief mention of the landowner protest." When this matter was originally before the City Council for decision, there was no affirmative showing even remotely suggesting that the enhanced voting requirements of section 17-1-17 might be applicable. Failing this, a majority vote of the City Council was sufficient. Tindall, 338 So.2d at 999.
The circuit court erroneously placed upon the council the burden of satisfying the requirements of section 17-1-17. The circuit court held that remand was necessary because there was "no action by the City Council to classify and count the protestors according to statutory criteria." With due respect to the circuit court, this is a burden which the law does not place upon the council. It was up to the protesting landowners to "affirmatively show that they were within the statutory class who could validly object." Abide Bros., 231 So.2d at 485. They failed to make any showing in this regard, much less an affirmative one, and thus a remand to the council, which gave the protestors a second bite, was unwarranted.
Holding as we do that a remand to the council on this point was unwarranted, we do not address the wisdom of the council's alternative holding that, in fact, less than the required percentage of landowners objected.

IV.
Finally, there is the matter of whether the council's rezoning decision must be set aside. Initially, we reject Hilbert's contention that the original decision of the City Council on August 10, 1987, denying the zoning application of the applicant should have been conclusive. In Anderson, American Law of Zoning 3d § 4.29 (1986), we find the following:
The power of a municipal legislative body to amend the zoning regulations is legislative in character. Therefore, it is not exhausted when it has been used once. Rather, a legislative body can reconsider its passage or rejection of a proposed amendment.

A.
Before property is reclassified, an applicant seeking rezoning must prove by clear and convincing evidence either that (1) there was a mistake in the original zoning, or (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that a public need exists for rezoning. Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987); Wright v. Mayor and Comm'rs of City of Jackson, 421 So.2d 1219 (Miss. 1982).
Any appellate court examining a zoning order by a City Council proceeds with a restricted scope of judicial review. The zoning decision of a local governing body which appears to be "fairly debatable" will not be disturbed on appeal, and will be set aside only if it clearly appears the decision is arbitrary, capricious, discriminatory, illegal, or is not supported by substantial evidence. Barnes v. Board of Supervisors, DeSoto County, 553 So.2d 508 (Miss. 1989); Luter v. Hammon, 529 So.2d 625, 628 (Miss. 1988); Ridgewood Land Co. v. Moore, 222 So.2d 378, 379 (Miss. 1969). "`Fairly debatable' is the antithesis *1281 of arbitrary and capricious. If a decision is one which could be considered `fairly debatable,' then it could not be considered arbitrary or capricious ..." Saunders v. City of Jackson, 511 So.2d at 906.

B.
The City of Biloxi contends the circuit judge conducted a de novo review of the evidence and erroneously concluded the action of the City Council was "arbitrary, capricious and discriminatory." It suggests the lower court ignored the "fairly debatable" standard of review.
In Resolution 323-87 the City Council denied Shinn's application. It initially concluded the applicant had failed to prove by clear and convincing evidence there was a mistake in the original zoning or a substantial change in the character of the neighborhood together with a public need for the change in zoning. In Ordinance 1503 adopted forty nine (49) days later, the City Council concluded the applicant had shown by clear and convincing evidence not only a mistake in the original zoning of the property but a substantial change in the character of the neighborhood, as well as public need.
The conclusion reached by the City Council that the character of the neighborhood had changed substantially, and that a public need existed to justify rezoning, is fairly debatable. We therefore omit any discussion of the City Council's finding of mistake, except to say that we view this decision to be fairly debatable as well, and thus beyond the limited power of an appellate court to disturb.
The council received evidence of a proposed expansion of the wastewater treatment plant in the area. It considered the fact that the sewage treatment plant had undergone previous expansion to provide service to parts of Keesler Air Force Base and the city of Gulfport, and that construction, operation and expansion of this plant all occurred subsequent to the enactment of the comprehensive zoning ordinance in March, 1973.
It likewise considered the need for a transition, or buffer, zone between the wastewater treatment plant to the south and the residential areas to the north and east in order that the sewage treatment plant expansion would not unduly infringe upon the residential properties. There was testimony from a real estate appraiser suggesting that the highest and best use of the subject property would be for medical services and not single family residential use, and that medical services use would be in harmony with the remainder of the neighborhood.
The Zoning Text and Map Committee which considered Shinn's application and recommended approval to the council noted their agreement with Shinn that the change represented a logical extension of the medical services zoning. The Committee report also noted that Shinn's parcel has a greater affinity to the sewage treatment plant and access road than it does to any of the adjoining residential property, and therefore, the construction, operation and subsequent expansion of the sewage treatment plant brought about a change in the character of the neighborhood affecting Shinn's parcel of land.
Finally, the council noted that because of the unique location of Shinn's property in relation to the sewage treatment plant, rezoning the Shinn property "would not constitute a basis for the rezoning of other properties, and would not be precedent setting in nature."

C.
Neither this Court nor the circuit court should sit as a super-zoning commission. We hold the decision of the City Council of the City of Biloxi in this case was fairly debatable. Thus, the circuit court erred in overturning the decision of the City Council, and accordingly, the decision of the circuit judge reversing the decision of the Biloxi City Council and ordering that the subject property shall revert to its original zoning classification, R1-A, single family residential, is reversed, and the decision of the City Council reinstated.
REVERSED AND ORDER OF BILOXI CITY COUNCIL REINSTATED.
*1282 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.