# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CC-01230-SCT

*WALTER "BOOTS" McDERMENT*

*v.*

*MISSISSIPPI REAL ESTATE COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/97 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM T. BAILEY, SR. |
| ATTORNEYS FOR APPELLEE: | JOHN L. MAXEY, II |
| | JOHN F. HAWKINS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 9/23/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/14/99 |

## EN BANC.

## BANKS, JUSTICE, FOR THE COURT:

¶1. This case involves the revocation of a Real Estate Broker's License by Order of the Real Estate Commission. The real estate agent raises the issue of whether there was substantial evidence to support the revocation of his license. We find that the evidence presented below was sufficient to support the commission's finding that the agent violated Miss. Code Ann. § 73-35-21 (a) and (m) and the finding that he violated Rule IV.B.4 of MREC's Rules and Regulations, and as such the judgment regarding this issue is affirmed. However, the evidence was insufficient to support the finding that the agent violated Miss. Code Ann. § 73-35-21(f). For this reason this case is reversed and remanded to the Commission for a determine of whether, in its opinion, the remaining violations warrant subjecting McDerment to sanctions.

### I.

¶2. Walter "Boots" McDerment ("McDerment") was licensed to sell real estate in the State of Mississippi. On June 20, 1996, Anthony and Elizabeth Bucca (the "Buccas"), who were joint owners of real estate in George County, Mississippi, listed their property for sale with McDerment. On September 26, 1996, the Buccas swore out a statement of complaint against McDerment with the Mississippi Real Estate Commission ("MREC"). Following an investigation MREC filed a formal complaint against McDerment,

alleging:

> The above and foregoing acts of the respondent constitute violation of the Mississippi Real Estate Broker's License Act of 1954 , as amended, and Rules and Regulations of the Commission, more specifically, Section[s] 73-35-21 (a), (f) and (m) and Rule IV.B.4. of the Rules and Regulations:
>
> 73-35-21(a) Making any substantial misrepresentation in connection with a real estate transaction;
>
> 73-35-21(f) Failing, within a reasonable time, to account for or to remit any monies coming into his possession which belong to others, or commingling of monies belonging to others with his own funds. Every responsible broker procuring the execution of an earnest money contract or option or other contract who shall take or receive any cash or checks shall deposit, within a reasonable period of time, the sum or sums so received in a trust or escrow account in a bank or trust company pending the consummation or termination of the transaction. "Reasonable time" in this context means by the close of business of the next banking day;
>
> 73-35-21(m) Any act or conduct, whether of the same or a different character than herein above specified, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing.
>
> IV.B.4. Every contract must reflect whom the broker represents by a statement over the signature of the parties to the contract.

¶3. An evidentiary hearing was held before MREC on February 6, 1997. The testimony adduced at the hearing revealed that the Buccas had entered into a contract with James Rayburn for the purchase and sale of their property. The contract stated that the buyer had deposited Four Thousand Dollars ($4,000.00) in earnest money with McDerment. The contract further provided that the earnest money would be forfeited as liquidated damages in the event the buyer failed to perform.

¶4. The copy of the contract McDerment gave the Buccas was not signed by the buyer. Mrs. Bucca testified that when she asked McDerment to give her a copy signed by the buyer he told her that she did not need one. As a result Mrs. Bucca went to McDerment's office at a time that she knew he was away and asked McDerment's son to give her copy of the contract signed by the buyer. McDerment's son gave Mrs. Bucca a copy of the buyer signed contract after she told him that McDerment had forgotten to give her a copy signed by the buyer.

¶5. McDerment testified that although he had a contract signed by the buyer, he had not given a copy of that contract to the Buccas because the buyer had not deposited the earnest money with him. It was not until after the purchaser had failed to fulfill his obligations under the contract of sale and the Buccas had demanded their share of the earnest money, that McDerment informed them the earnest money had never been deposited with him.

¶6. MREC further alleged the contract did not have a statement of which party McDerment represented printed over the parties' signatures. McDerment admitted that he neglected to include such a statement on the contract. The absence of a statement of which party he represented constituted a violation of Rule IV.B.4., of MREC's Rules and Regulations.

¶7. After the hearing MREC issued an Order holding that the above facts constituted violations of Miss.

Code Ann. §§ 73-35-21(a), (f) and (m) and Rule IV.B.4. of the Mississippi Real Estate Commission Rules and Regulations. The Order further held that as a result of McDerment's actions his Real Estate Broker's License was thereby revoked.

¶8. McDerment appealed MREC's Order to the Circuit Court of George County, Mississippi. On appeal to the circuit court, McDerment raised issues identical to those raised before this Court. In affirming MREC's Order the circuit court found that the Commission's decision was supported by substantial evidence. The circuit court further held that there was no legal support for McDerment's argument for a jury trial or for his claim that the administrative proceedings were criminal in nature.

## II.

¶9. In reviewing an administrative agency's findings of fact the circuit court's and this Court's appellate authorities are limited by the arbitrary and capricious standard of review. *[Mississippi Real Estate Comm'n v. Hennessee](https://...)*, 672 So. 2d 1209, 1217 (Miss. 1996). Matters of law will be reviewed de novo, *KLLM, Inc., v. Fowler*, 589 So. 2d 670, 675 (Miss. 1991), with great deference afforded an administrative agency's "construction of its own rules and regulations and the statutes under which it operates." *Mississippi State Tax Comm'n v. Mask*, 667 So. 2d 1313, 1314 (Miss. 1995) (citations omitted). Therefore, an agency's decision will not be disturbed on appeal absent a finding that it "'(1) was [not] supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.'" *Mask*, 667 So. 2d at 1315 (quoting *Mississippi State Tax Comm'n v. Vicksburg Terminal, Inc.*, 592 So. 2d 959, 961 (Miss. 1991)).

## III.

### A.

¶10. McDerment raises the issue of whether MREC's decision to revoke his real estate license was supported by substantial evidence. MREC found that McDerment's actions violated Miss. Code Ann. §§ 73-35-21(a), (f) and (m) and Rule IV.B.4. of MREC's Rules and Regulations. Without analysis the circuit court found that there was substantial evidence presented at MREC's hearing to support the Order revoking McDerment's Real Estate Broker's License. This ruling by the circuit court was too broad.

¶11. This Court concludes that MREC's finding that McDerment violated Miss. Code Ann. § 73-35-21(f), as amended, was not supported by substantial evidence. Miss. Code Ann. § 73-35-21(f) (1995), states:

> . . . .

> (f) Failing, within a reasonable time, to account for or to remit any *monies coming into his possession* which belong to others, or *commingling of monies* belonging to others with his own funds. Every responsible broker procuring the execution of an earnest money contract or option or other contract *who shall take or receive any cash or checks* shall deposit, within a reasonable period of time, the sum or sums so received in a trust or escrow account in a bank or trust company pending the consummation or termination of the transaction. "Reasonable time" in this context means by the close of business of the next banking day.

(emphasis added). The above subsection sets out the real estate broker's responsibility with regards to

monies held in trust for another. In order for McDerment to have violated §73-35-21(f), the earnest money must have come into his possession. *See generally **Mississippi Real Estate Comm'n v. White***, 586 So. 2d 805 (Miss. 1991). MREC recognized in its findings of fact that McDerment had never received any monies from the buyer. Therefore, McDerment could not have violated §73-35-21(f).

¶12. There was substantial evidence, however, to support MREC's finding that McDerment committed the other violations with which he was charged. A holding which is supported by substantial evidence can not be arbitrary and capricious. ***City of Biloxi v. Hilbert***, 597 So. 2d 1276, 1280-81 (Miss. 1992). Miss. Code Ann. § 73-35-21 provides a real estate license may be revoked where the licensee is found to have violated any of the enumerated subsections. MREC weighed the evidence and found that McDerment's actions constituted a violation of Miss. Code Ann. §§ 73-35-21(a) and (m). There was also substantial evidence to support MREC's finding that McDerment violated Rule IV.B.4 of MREC's Rules and Regulations. McDerment admitted that he neglected to include, over the signatures on the contract, a statement of which party he represented, in violation of Rule IV.B.4. However, because there is insufficient evidence to support a finding that McDerment violated Miss. Code Ann. § 73-35-21(f), this case is remanded to allow the Commission to determine if, in its opinion, the remaining violations warrant subjecting McDerment to sanctions.[1] ***Mississippi Real Estate Comm'n v. White***, 586 So. 2d at 811.

## B.

¶13. McDerment claims that the administrative proceeding violated his constitutional right to a trial by jury. McDerment argues that the provisions of Miss. Code Ann. § 73-35-31, subject him to penal action, thereby entitling him to a jury trial. Miss. Code Ann. § 73-35-31 (1995), in pertinent part, provides:

> § 73-35-31. Penalties for violations of chapter.
>
> (1) Any person violating a provision of this chapter shall, upon conviction of a first violation thereof, if a person, be punished by a fine or not less than five hundred dollars ($500.00) nor more than one thousand dollars ($1,000.00), or by imprisonment for a term not to exceed ninety (90) days, or both; . . . Upon conviction of a second or subsequent violation, if a person, shall be punished by a fine of not less than one thousand dollars ($1,000.00) nor more than two thousand dollars ($2,000.00), or by imprisonment for a term not to exceed six (6) months, or both;

However, the case against McDerment was predicated on Miss. Code Ann. § 73-35-21, not § 73-35-31. It must be determined whether the fact that § 73-35-31 is in the same Act as § 73-35-21, makes all proceedings under the Act criminal in nature.

¶14. A respondent to an administrative hearing is only entitled to the protections normally afforded a criminal defendant where the penalty is intended as a criminal punishment such as to make the proceedings criminal in nature. ***Roach v. National Transp. Safety Bd.***, 804 F.2d 1147, 1152-53 (10th Cir. 1986); *see also **Beall Constr. Co. v. Occupational Safety & Health Review Comm'n***, 507 F.2d 1041 (8th Cir. 1974). Determining whether an administrative''' penalty is civil or criminal is a matter of statutory construction.'''***Roach,*** 804 F.2d at 1153 (quoting ***United States v. Ward***, 448 U.S. 242, 248 (1980)). The fact that Congress provides for both civil and criminal penalties under the same Act does not make all penalties under the Act criminal in nature. ***Roach***, 804 F.2d at 1153. The separation of a penalty from the criminal provisions of an Act is a strong indication that the penalty is civil. ***Id.***

¶15. In the case at bar, §73-35-31 is separated from the section of the Act which grants MREC the authority to revoke or suspend a license. Similar to *Roach*, this separation of regulatory penalties and criminal penalties is a strong indication that the revocation or suspension of a license under the Act is a civil penalty separate and distinct from the criminal penalty. *See generally,* **Mitchell v. State**, 402 So. 2d 329 (Miss. 1981). Therefore, we find that § 73-35-31, by being in the same act as § 73-35-21, does not transform a proceeding under the latter into a criminal proceeding.

¶16. It is further determined that the civil penalty of revocation or suspension of a license is not criminal such as to afford a respondent the right to a jury trial. In the context of bar disciplinary proceedings this Court has held that because bar disciplinary proceedings are inherently adversary they are quasi-criminal in nature. *Mississippi Comm'n on Judicial Performance v. Russell*, 691 So. 2d 929, 945 (Miss. 1997). But the quasi-criminal nature of bar proceedings does not make the proceedings criminal such as to entitle a respondent to the protections afforded a criminal defendant. *See* *Emil v. The Mississippi Bar*, 690 So. 2d 301, 312 (Miss. 1997). This assignment of error is without merit.

¶17. Although not addressed by the circuit court, McDerment further appears to contend that testimony regarding the results of an investigation into his escrow account went to the issue of co-mingling of funds and should have been excluded. During the hearing an investigator testified that McDerment's escrow account was audited; the audit was done by another investigator; and his testimony was based on a report of the audit. McDerment argues the testimony regarding the escrow account should have been excluded for the following reasons: (1) McDerment was not Mirandized prior to the investigation of his escrow account; (2) the investigator did not have a search warrant; and (3) the testimony was hearsay.

¶18. First, there is no merit to McDerment's claim that the testimony should have been excluded because he was not Mirandized. It is well settled that a *Miranda* warning is applicable only where there is a custodial interrogation. *Pierre v. State*, 607 So. 2d 43, 52 (Miss. 1992). There is no evidence in the record that McDerment was ever arrested or in any way placed in police custody nor is there evidence of a police interrogation. Also, as discussed *supra*, this is not a criminal case.

¶19. Secondly, there is no merit to the claim that the testimony should have been excluded because the investigator did not obtain a search warrant prior to auditing the escrow account. This Court has held that cases on appeal must be decided on the facts contained in the record, not on assertions made in the briefs. *Burney v. State*, 515 So. 2d 1154, 1160 (Miss. 1987) (quoting *Mason v. State*, 440 So. 2d 318, 319 (Miss. 1983)). The burden falls on the appellant to ensure there is sufficient evidence in the record to support an assertion of error. *Burney*, 515 So. 2d at 1160 (quoting *Robinson v. State*, 345 So. 2d 1044, 1045 (Miss. 1977)).

¶20. McDerment offers no facts in support of his claim that the testimony should have been excluded because the investigator did not obtain a search warrant prior to auditing the escrow account. Nor is there evidence in the record from which this Court can determine that the audit was illegal. The Investigator's Interview Report is the only evidence of the audit procedures. From this report it can be gleaned that the investigator interviewed McDerment as to the Buccas' allegations; the interview appears to have taken place at the office of McDerment Realty; and at some point the investigator examined the escrow account. This evidence is insufficient to support a finding that the account was examined illegally.

¶21. Additionally, even if the information regarding the escrow accounts had been obtained illegally, its admission would constitute harmless error. The only information derived from the testimony was that the

earnest money had not been deposited into the escrow account. The fact that the earnest money was not in the escrow account supports the claim that the earnest money was never given to McDerment. This is a fact which McDerment readily admits. In fact, it is the basis of his defense.

¶22. Thirdly, there is no merit to the contention that the testimony regarding the results of the audit of the escrow account should have been excluded as hearsay. "An administrative agency may receive hearsay evidence where it is corroborated or where there is other satisfactory indicia of reliability." *McGowan v. Mississippi State Oil & Gas Bd.*, 604 So. 2d 312, 320 (Miss. 1992). As discussed *supra*, the testimony established that the earnest money had not been deposited into the escrow account, a fact to which McDerment admits. It is evident that McDerment's testimony provides corroboration as to the audit's reliability.

## CONCLUSION

¶23. McDerment raised the issue of whether there was substantial evidence to support the revocation of his license. The finding that McDerment violated Miss. Code Ann. § 73-35-21 (a) and (m) and the finding that he violated Rule IV.B.4 of MREC's Rules and Regulations, is affirmed. However, the evidence was insufficient to support the finding that McDerment violated Miss. Code Ann. § 73-35-21 (f). For this reason this case is reversed and remanded to the Commission for a determination of whether, in its opinion, the remaining violations warrant subjecting McDerment to sanctions. Finally, the issue of whether the administrative proceedings violated McDerment's constitutional rights is affirmed. Therefore, this matter is affirmed in part and reversed and remanded in part.

¶24. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., McRAE, WALLER AND COBB, JJ., CONCUR. SMITH, J., CONCURS IN PART. WALLER, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, SMITH AND COBB, JJ. PITTMAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND MILLS, J.**

## WALLER, JUSTICE, SPECIALLY CONCURRING:

¶25. I concur with that portion of the majority opinion which holds that McDerment did not violate Miss. Code Ann. § 73-35-21(f) (1995) as the Mississippi Real Estate Commission failed to present any evidence that McDerment ever had possession of any earnest money obtained on behalf of the Buccas. I write separately because I believe the Commission, in reconsidering the sanctions on remand, should review the scant evidence on which McDerment's license was revoked.

¶26. The burden is on the Commission to present testimony which clearly establishes McDerment's guilt. *Mississippi Real Estate Comm'n v. White*, 586 So. 2d 805, 808 (Miss. 1991); *Harris v. Mississippi Real Estate Comm'n*, 500 So. 2d 958, 962 (Miss. 1986); *Mississippi Real Estate Comm'n v. Ryan*, 248 So. 2d 790, 793-94 (Miss. 1971). The proof need not be beyond a reasonable doubt, *Ryan*, 248 So. 2d at 793-94, but we have held that "disciplinary charges against a professional must be proved by clear

and convincing evidence." *White*, 586 So. 2d at 808 (*quoting* *State Bd. of Psychological Exam'rs v. Hosford*, 508 So. 2d 1049, 1054 (Miss. 1987)). The general rule is that this Court does not review *de novo* the facts in an administrative appeal. *Mississippi State Bd. of Nursing v. Wilson*, 624 So. 2d 485, 489 (Miss. 1993). Notwithstanding our deference given to agency decisions, it seems appropriate here to subject the Commission's decision to heightened scrutiny since the Commission found McDerment violated § 75-35-21(f) despite the fact that its own audit revealed otherwise.

¶27. The Commission made a specific finding of fact that "the contract was accepted by the sellers (the Buccas) on the day that it was offered." The obvious problem with this finding is that McDerment never offered a completed contract to the Buccas. It was undisputed that the contract given to the Buccas by McDerment lacked the signature of the buyer, James Rayburn. Even Mrs. Bucca testified that they were waiting for Mr. Rayburn to get "all his things in order to buy the house."

¶28. The only way Mrs. Bucca ever obtained a completed contract, i.e., one with all of the signatures on it, was to purposefully wait until she was absolutely sure that McDerment was not in his office and persuade the appraiser to give her another copy under the premise that McDerment had forgotten to give her one. Indeed, McDerment did have in his possession a copy of the contract which contained the signatures of both the Buccas and the Rayburns, in addition to McDerment's own signature. However, McDerment never delivered the completed contract to the Buccas because there was no completed contract. He testified that he was waiting until Rayburn obtained loan approval from a bank, upon which event the earnest money would be paid, and the contract could be released.

¶29. I agree with the majority that this case should be reversed and remanded for a new determination by the Mississippi Real Estate Commission of whether McDerment's license should be revoked, and I would further urge the Commission to review the factual findings and conclusions in this case, and reconsider the penalty levied on McDerment.

### BANKS, SMITH AND COBB, JJ., JOIN THIS OPINION.

### PITTMAN, PRESIDING JUSTICE, DISSENTING:

¶30. I agree with the majority opinion on all issues save for the remanding of the case to the Commission due to the fact that there was insufficient evidence to support a finding that McDerment violated Miss. Code Ann. § 73-35-21(f). I agree that there was insufficient evidence to support a finding that Miss. Code Ann. § 73-35-21(f) had been violated, however, the majority agrees that the evidence supported a finding that §§ 73-35-21(a) and (m) had been violated. Further, Miss. Code Ann. § 73-35-21 (1995) provides in relevant part that:

> The commission shall have full power to refuse a license for cause or to revoke or suspend a license where it has been obtained by false or fraudulent representation, *or where the licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of :* (a)-(m) . . . .(emphasis added).

¶31. The clear plain language meaning of this statute is that the commission is fully justified in suspending or revoking a license where it is found that any of the acts contained in the statute were violated. Here, that

burden has been met by the commission. The commission, after viewing the evidence presented at the hearing, has found that not one, but two of the prohibited acts occurred in violation of the statute. Under Miss. Code Ann. § 73-35-21, the commission could have revoked or suspended the license for either of the violations. There is no need, therefore, to remand this case back to the commission simply because the evidence did not support a finding of a third violation of the statute. Any violation will do. For that reason, I respectfully dissent from the majority's opinion.

## SULLIVAN, P.J., AND MILLS, J., JOIN THIS OPINION.

1. The dissent suggests that because the commission could have ordered the same sanction based upon the violations which were supported by the evidence we should affirm. What the commission could do and what it would have done, however, may be two different things. It is for the commission to say in the first instance whether it will impose a particular sanction for any particular violation. The commission could have said that the sanction it imposed was founded upon each violation independently. It did not choose to do so. Because it did not, it is appropriate to remand the case to the commission to make that finding. This is precisely what we did in *Mississippi Real Estate Comm'n v. White* in similar circumstances.