# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CC-00623-SCT

*CITIZENS ASSOCIATION FOR RESPONSIBLE
DEVELOPMENT, INC.*

*v.*

*CONRAD YELVINGTON DISTRIBUTORS, INC.,
HARRISON COUNTY DEVELOPMENT
COMMISSION AND HARRISON COUNTY*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/19/2002 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | REILLY MORSE |
| ATTORNEYS FOR APPELLEES: | HARRY R. ALLEN |
| | JOSEPH R. MEADOWS |
| | KAREN J. YOUNG |
| | BRITT R. SINGLETARY |
| | GARY DALE THRASH |
| | DAVID W. CRANE |
| | GLEN K. TILL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/06/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., CARLSON AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from the decision of the Circuit Court of Harrison County, Mississippi, First

Judicial District, affirming the actions of the Harrison County Board of Supervisors ("the Board") and its

governmental subdivision, Harrison County Development Commission ("HCDC"), authorizing the sale of

county property to Conrad Yelvington Distributors, Inc. ("Yelvington") for use as an aggregate distribution

plant. The objectors to the sale, Citizens Association for Responsible Development, Inc. ("CARD") assert six issues on appeal: (1) the decision by Harrison County and HCDC to allow CYI's outdoor aggregate distribution terminal into a light industrial park violated the land use provisions of the ordinance creating the Long Beach Industrial Park; (2) the decisions of Harrison County and HCDC do not contain sufficient detail as to the findings or reasoning to permit judicial review; (3) the record lacks proof or findings that vibrations and impacts upon property values were adequately considered by the Board; (4) the record lacks findings and proof that noise impacts were minimal or were adequately mitigated; (5) the conclusion that impacts from silica dust were insignificant is not supported by the record; and (6) the conclusion that the transaction was valid and supported by adequate consideration is both legally and factually erroneous.

¶2.     We find that the circuit court did not err in concluding that the decision of Harrison County and the Harrison County Development Commission was not arbitrary or capricious and was supported by adequate consideration. Therefore, we affirm the circuit court's judgment.

**FACTS**

¶3.     By a Bill of Exceptions filed pursuant to Miss. Code Ann. § 11-51-75 (Rev.2002), the Citizens Association for Responsible Development, Inc. ("CARD") appealed the conveyance of county-owned property in the Long Beach Industrial Park to Conrad Yelvington Distributors, Inc. ("Yelvington"). CARD's members include residents of neighborhoods near the Industrial Park which was created in the early 1970's to encourage and foster the location and growth of industry in the county. The Industrial Park is located in an unincorporated part of Harrison County governed by the Board of Supervisors who have legal authority to convey county-owned property. The Harrison County Development Commission ("HCDC") is a governmental subdivision of Harrison County.

2

¶4. In January 1999, Yelvington began negotiating with HCDC to acquire land in the Industrial Park for its aggregate distribution facility, in large part because the Industrial Park has a railroad spur necessary to the efficient operation of Yelvington's business. Fearing that excessive noise, vibrations and air pollution from silica dust would emanate from Yelvington's facility, CARD expressed concern about the location of such a business in the Industrial Park.

¶5. The Harrison County Board of Supervisors held three hearings on the matter, giving proponents and opponents of the sale full opportunity to be heard and present evidence supporting their respective positions. In addition to hearing from experts presented by Yelvington on the issues raised by CARD, the Board engaged experts of its own to assist in analyzing the impact of the Yelvington plant on the surrounding area. The Board also personally visited the Yelvington plant and observed its normal operations before finally deciding to convey the property to Yelvington. Although Harrison County had no comprehensive zoning ordinance in effect at the time of the conveyance to Yelvington, the Board of Supervisors attempted to satisfy the concerns of CARD by placing a number of restrictions upon the use of the property conveyed to Yelvington. In addition, the County persuaded Yelvington to agree to record a covenant restricting use of its privately owned 18 acres of property located just outside the park.

¶6. On March 19, 2002, the circuit court entered an order addressing these issues. The court, finding no error of law in the proceedings below nor in the record made before the Board of Supervisors, found that the decision of the Board was reasonably debatable and that it was supported by substantial evidence, and therefore affirmed the decision of the Board to convey property in the Long Beach Industrial Park to Yelvington.

## DISCUSSION

## I. WHETHER THE DECISION BY HARRISON COUNTY AND HCDC TO ALLOW YELVINGTON'S OUTDOOR AGGREGATE DISTRIBUTION TERMINAL INTO A LIGHT INDUSTRIAL PARK VIOLATED THE LAND USE PROVISION OF THE ORDINANCE CREATING THE PARK.

¶7. In reviewing an administrative agency's findings of fact, our courts are limited by the arbitrary and capricious standard of review. *Bd. of Supervisors of Harrison County v. Waste Management of Miss., Inc.* 759 So.2d 397, 400 (Miss. 2000) (citing *McDerment v. Miss. Real Estate Comm'n*, 748 So.2d 114, 118 (Miss. 1999)). An action is arbitrary or capricious if the agency "entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Miss. Dep't of Envtl. Quality v. Weems*, 653 So.2d 266, 281 (Miss. 1995).

¶8. CARD argues that the decision by Harrison County and HCDC to allow Yelvington's outdoor aggregate distribution terminal into a light industrial park violated the land use provisions of the ordinance creating the Long Beach Industrial Park.

¶9. The Long Beach Industrial Park was created pursuant to resolutions of HCDC and the Board of Supervisors. In support of its resolutions, HCDC and the Board of Supervisors adopted and approved a feasibility study prepared by Brown and Russell, Inc. The report states in part:

> The proposed industrial development has been discussed with officials of the Gulf Regional Planning Committee (GRPC) and they stated that they would have no objections to an industrial park developed for light industry provided protective covenants were used to insure that the industrial park would not destroy the surrounding area as a residential section." The report further states: "The park is to be developed to attract light industry that will be compatible with the surrounding residential areas. Thus the industry should be of a type which does not present a problem by discharging air or

4

water pollutants, create excessive noise, nor give off offensive odors. These factors should dictate the type of industry allowed within the park.

¶10.    CARD attempts to impose a zoning regulation upon HCDC by citing the resolutions of HCDC and the Board authorizing the creation of the Park. This attempt is made by referencing the above- mentioned language which was contained in the Brown and Russell feasibility study. HCDC and the Board did adopt and approve the feasibility study prepared by Brown and Russell concerning the Long Beach Industrial Park. However, at no time did HCDC or the Board adopt, implement or record covenants restricting the sale of said land within the park to "light industry." In fact, prior to construction of the Yelvington facility, the Park housed six companies, three of which were classified as "light industry" and three as "heavy industry." Furthermore, according to the City of Gulfport's Zoning Ordinance, Yelvington is a "sand and gravel storage yard" and is classified as a light industry. At no time did HCDC or the Board ever adopt an official policy with regard to the sale of land within the Park.

¶11.    The Fifth Circuit has defined official policy in *Bennett v. City of Slidell*, 735 F.2d 861(5th Cir. 1984) (en banc), as follows:

> 1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2.  A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policymaking authority.

*Bennett*, 735 F.2d at 862.

¶12.    The acceptance of the Brown and Russell report in a recital of a resolution regarding the feasibility of the acquisition and creation of the Long Beach Industrial Park is not a policy statement, ordinance, or regulation that is officially adopted and promulgated by the County's lawmaking officials At no time did

HCDC or the County ever adopt a resolution, covenant or other regulation specifically implementing land use restrictions. Thus, we find that this argument is without merit.

**II. WHETHER THE FINDINGS OR REASONING LEADING TO THE FINAL DECISION OF HARRISON COUNTY AND HCDC CONTAIN SUFFICIENT DETAIL AS TO PERMIT JUDICIAL REVIEW.**

¶13. CARD relies on *McGowan v. Miss. St. Oil & Gas Board*, 604 So.2d 312 (Miss. 1992), in stating that the County and HCDC have not provided a sufficient explanation for their decisions in the resolutions approving the Yelvington transaction, and thus, said decisions are not subject to judicial review.

¶14. However, *McGowan* does not stand for the proposition that HCDC and the Board of Supervisors need to make specific findings with regard to their decision in the case at hand. The issue which *McGowan* reviewed was a denial by the Oil and Gas Board of a request for a permit to operate "packerless" salt water disposal wells. *McGowan*, 604 So.2d at 324. The denial of the permit in *McGowan* was reviewed by the Court in light of the statutory responsibility imposed upon the Oil and Gas Board in Miss. Code Ann. §§53-1-1, 53-1-3 and 53-1-17 (1972). There is no such statutory requirement in the case at bar. *See* Miss. Code Ann, § 59-9-19 (Rev. 1996).

¶15. The record below is clear that the Board of Supervisors and HCDC adequately considered the complaints and concerns of CARD as well as other members of the community. The Board allowed CARD members to present their concerns and objections at three meetings. The Board hired independent experts to investigate the issues presented by CARD. The Board ordered and received studies with regard to sound, health hazards and effect on the value of surrounding properties. The Board personally visited the Yelvington facility and observed normal operations. The final order of the Board addresses the concerns of CARD and incorporates several restrictions upon Yelvington that include, inter alia, limiting the hours

of operation from 6:00 a.m. to 6:00 p.m., the implementation of a system of dust control, the implementation of sound control barriers, limitations on night time security lighting, and erection of an earthen berm to enhance the appearance of the Yelvington facility. After a full year of meetings, investigations by experts and a personal visit to the Yelvington plant, HCDC and the Board decided that the sale of the property to Yelvington would be in the best interest of the County.

¶16. There is a rebuttable presumption in favor of the agency's decision, and the burden of proving to the contrary is on the challenging party. *Bd. of Law Enforcement Officers Standards & Training v. Butler*, 672 So.2d 1196, 1199 (Miss. 1996). Therefore, an agency's decision will not be disturbed on appeal absent a finding that it was not supported by substantial evidence, was arbitrary or capricious, was beyond the power of the administrative agency to make, or violated some statutory or constitutional right of the complaining party. *Harrison County*, 759 So.2d at 400 (citing *McDerment*, 748 So.2d at 118). "The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness." *Weems*, 653 So.2d at 281.

¶17. For the reasons stated above, we that the findings of HCDC and the Board were not arbitrary or capricious and were supported by substantial evidence.

### III. WHETHER THE RECORD CONTAINS SUFFICIENT PROOF OR FINDINGS THAT VIBRATIONS AND IMPACTS UPON PROPERTY VALUES WERE ADEQUATELY CONSIDERED BY THE BOARD.

¶18. CARD avers that, due to the nature of the Yelvington facility, vibrations are affecting surrounding properties. However, CARD has failed to present any expert testimony regarding the vibrations and/or decreasing property values. On the other hand, Yelvington and HCDC retained experts to investigate the claims asserted by CARD regarding vibrations and property values. With regard to the vibrations, the

7

experts stated that at two of the homes near the Yelvington plant the vibration effects from the plant could not be detected on the concrete slabs of the homes. The experts stated that at another home near the plant the vibrations from the plant could barely be detected and were at background levels. As for property devaluation, the expert retained by HCDC and the Board to investigate allegations of property devaluation found that no such devaluation had occurred. This expert testimony was not refuted by CARD.

¶19. CARD alleges that HCDC and the Board must provide specific findings regarding each and every issue raised by CARD. However, specific findings on such issues raised by CARD are not necessary. This Court has stated:

> In *City of Clinton* we simply emphasized the necessity of a record showing the factual basis for the findings of the governing body. Absent a record showing sufficient evidence to support the findings, it is inevitable that reversal will follow. On the other hand, while recognizing the desirability of specific findings by the zoning authority on each considered issue, we will not reverse for a lack of such specificity where a factual basis for the action is disclosed. In this case, the record is replete with factual bases for the Board's findings and its action..... The Board was not required to specifically state in its order whether its action rested on one or both of the asserted grounds because the facts supporting the action are adequately reflected in the record of proceedings.

*Faircloth v. Lyles*, 592 So.2d 941, 945 (Miss. 1991) (emphasis added).

¶20. Per *Faircloth*, there is no requirement that HCDC or the Board make specific findings of fact on each and every issue raised by CARD, as the record of proceedings adequately reflects the facts supporting their decision. Such a requirement would place an arbitrary and unreasonable burden on HCDC and the Board.

¶21. We find that the findings of HCDC and the Board were reasonable based on the evidence and were adequately supported by the record. This issue is without merit.

## IV. WHETHER THE RECORD CONTAINS SUFFICIENT FINDINGS THAT NOISE IMPACTS WERE MINIMAL OR WERE ADEQUATELY MITIGATED.

¶22.     CARD argues that the record lacks findings that noise created by the Yelvington facility is minimal and that noise reduction devices have not mitigated the level of noise.

However, the record clearly reflects that the noise impacts from the Yelvington facility are minimal and have been adequately mitigated. Harrison County retained Charles Waggoner, Ph.D., CHMM., Manager of Safety, Excellence and Environment with the Mississippi State Diagnostic Instrumentation and Analysis Laboratory. On two separate visits to the site, Dr. Waggoner performed sound level measurements and tests. These tests were within the normal range. However, HCDC and the Board went one step further and required Yelvington to install sound abatement devices in order to further reduce the noise level. According to Dr. Waggoner, "the sound abatement procedures for the shaker (the machine that CARD claims produces the most noise) worked, providing for a significant reduction in sound level." Dr. Waggoner provided evidence that the sounds from the shaker are quickly reduced to background levels as distance from the shaker increases. From the data collected, he found that shaker episodes are near baseline levels and can be completely obscured by passing traffic. This Court has repeatedly held that the zoning decision of a local governing body which appears "fairly debatable" will not be disturbed on appeal and will be set aside only if it appears the decision is arbitrary, capricious, discriminatory, illegal or is not supported by substantial evidence. *City of Biloxi v. Hilbert*, 597 So.2d 1276, 1280 (Miss. 1992); *Barnes v. Bd. of Supervisors, DeSoto County*, 553 So.2d 508, 510 (Miss. 1989).

¶23.     We find that this issue is fairly debatable. Thus, the decision of HCDC and the Board will be upheld.

### V.  WHETHER THE CONCLUSION THAT IMPACTS FROM SILICA DUST WERE INSIGNIFICANT IS SUPPORTED BY THE RECORD.

¶24.    CARD argues that the report submitted by Dr. Waggoner, who was hired by HCDC to investigate concerns alleged by CARD regarding silica dust, was inadequate since Dr. Waggoner "performed no measurements of actual emissions at the site." However, Dr. Waggoner did visit the site and stated that "activities conducted at [Yelvington] would be highly unlikely to represent a significant health risk to the surrounding community. "In general, individuals at risk of silicosis are expected to be exposed to high concentrations of particles in a confined space or to be within a few feet of the source of generation." Further, Dr. Waggoner stated that, in terms of health risks, he suspects that the area proximate to the Yelvington facility is more or less equivalent to walking on the beach or living near a road covered with stone aggregate.

¶25.    CARD has presented no evidence to refute the findings of Dr. Waggoner. Therefore, we find that this argument is without merit.

### VI.  WHETHER THE CONCLUSION THAT THE TRANSACTION WAS VALID AND SUPPORTED BY CONSIDERATION IS ERRONEOUS ON LAW AND FACTS.

¶26.    CARD contends that Yelvington did not have valid title or permission from HCDC to construct and operate its facility for the nine months prior to the vote on December 21, 1999. CARD argues that Yelvington's "occupation" of the land without permission from HCDC and without compensation to the County resulted in the County making a "donation to a private industry." CARD further claims that there is a prohibition against the county conveying land for an amount less than fair market value.

¶27.    The record reveals that nine months prior to the actual sale of the land Yelvington was granted a right of entry and approval from HCDC to enter and begin clearing the land in order to prepare it for

construction of the facility. Yelvington entered the land pursuant to the right of entry, cleared the land and began construction of the facility prior to the actual sale of the property. Yelvington acted at its own peril in this regard and would have been required to absorb the loss of the amount expended to build its plant had the land sale not been approved. However, the land sale was approved, and the County received $283,117.50 for the property, which was acknowledged and received as adequate in the resolutions and orders of HCDC.

¶28.    At no time did CARD provide any evidence of the fair market value of the property in question being less than $283,117.50. Moreover, Miss. Code Ann. § 59-9-19 clearly anticipates that property sold by and through HCDC located in an industrial park within the jurisdiction of HCDC may be sold "in the absence of monetary rental or other consideration" provided that there are covenants and obligations of the purchaser to make expenditures or construct improvements. The original resolution of HCDC approves the sale of property for the purpose of constructing and operating an aggregate distribution facility in compliance with the terms contained in the special warranty deed. The Special Warranty Deed imposed the covenant that the property be used as an aggregate distribution facility within one year and imposed restrictions upon its use otherwise.

¶29.    CARD failed to put on any evidence in the record below that the consideration was inadequate or that it was less than fair market value. The fact that Yelvington occupied the property in question prior to the consummation of the sale does not render the sale invalid.

¶30.    For the reasons stated above, we find that this argument is without merit.

## CONCLUSION

¶31.    We find that the circuit court did not err in concluding that decision of HCDC and the Board of Supervisors was not arbitrary or capricious and was supported by adequate consideration. Therefore we affirm the judgment of the Harrison County Circuit Court.

¶31. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB,  EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., AND DIAZ, J., NOT PARTICIPATING.**