KING, C.J.,
Dissenting:
¶ 18. With respect to the majority, I dissent. I believe it is error to reverse the circuit court’s ruling because the board of review’s decision was not supported by substantial evidence.
¶ 19. The majority notes that Clark did not file a brief with this Court, which is true. Normally, a party’s failure to submit a brief on appeal is equivalent to a confession of the errors alleged by the opposing *874 party. See Mahaffey v. Miss. Employment Sec. Comm’n, 912 So.2d 496, 497(¶ 6) (Miss.Ct.App.2005). However, the Court may elect to review the case for error. Id. Thus, this Court is not required to automatically reverse the trial court’s decision based on Clark’s failure to submit a brief on appeal.
¶20. The MDES argues that the circuit court erred by reversing the board of review’s decision to deny Clark unemployment benefits, finding that it was not supported by substantial evidence. The majority states that the circuit court failed to indicate what substantial evidence was missing from the record. However, it is quite obvious what is missing from the record — corroborating evidence that Clark was intoxicated on the job.
¶ 21. The board of review denied Clark’s unemployment benefits pursuant to Mississippi Code Annotated section 71-5-513 A(l)(b) (Supp.2006), which provides that a claimant will be disqualified from unemploymeht compensation if he was terminated based on acts of misconduct that occurred on the job. Section 71-7-13(3) specifically provides, in relevant part, that “[a]n employee discharged on the basis of a confirmed ... alcohol test ... shall be considered to have been discharged for willful misconduct.” (Emphasis added). “The employer bears the burden of proving misconduct by clear and convincing evidence.” Coahoma County v. Miss. Employment Sec. Comm’n, 761 So.2d 846, 851(¶ 14) (Miss.2000) (citing Miss.Code Ann. § 71-5-513 A(1)(c) (Supp.1999)).
¶ 22. During the hearing, Clark admitted that he drank a few beers the night before he reported to work. The majority states that Clark’s statement was inconsistent because he “told the claims examiner that he drank a few beers several hours before reporting to work.” However, the ALJ relied upon the following when making his decision to deny Clark’s unemployment benefits:
The claimant had consumed five (5) 12 ounce cans of beer after 6 pm on August 12, 2007. The claimant reported to work on August 13, 2007, with the smell of alcohol on him. The claimant reported to work at 12:45 pm and was tested at 1:30 pm.
The test results indicated that the claimant’s blood alcohol level exceeded] the cut off amount. The test results were not made available as evidence for the record. The ALJ relied upon Clark’s admission that he drank beer the night before he reported to work. The fact that Clark drank beer the night before he reported to work is not substantial evidence that he may have been intoxicated when he reported, to work the next day.
¶ 23. During the hearing with the ALJ, Gully testified that Peco’s zero tolerance policy called for a reasonable suspicion test. Gully testified that two people in management were to observe the employee and fill out a checklist, which basically notes characteristics of intoxication. There is no checklist in the record. Nor does the record contain any testimony regarding the specific indicators of the checklist and their application to Clark. In regard to characteristics of intoxication, Gully simply testified that he smelled alcohol on Clark’s breath and that Clark’s breathalyzer test results revealed that he had an unacceptable blood alcohol level.
¶ 24. As previously mentioned, Peco did not submit a copy of Clark’s alcohol test results. The majority states that Clark admitted that Gully showed him his alcohol test results. However, Clark explained that Gully gave him a handwritten note, indicating his alleged blood alcohol level. Gully refused to let Clark look at the lab report. Clark testified that he requested a copy of his test results from the lab, but *875 the lab instructed him to obtain his results from Peco. Peco refused to give Clark his results supposedly because of a company policy. However, Gully admitted that this alleged company policy was not contained in the employees’ handbook.
¶ 25. The assertion by Gully, on behalf of Peco, that the lab report containing the test results was company property and could not be given to Clark is beyond incredible. When asked about the lab report by the ALJ, Gully, without restriction, stated that he could provide it to the ALJ. That response would seem to belie the reason that Peco gave for not releasing the lab report. The majority argues that Clark could have signed a medical release form to allow Peco to release the test results. That argument suggests that Peco required Clark’s permission to introduce the lab report. Such a suggestion is absurd and inconsistent with Peco’s statement to the ALJ.
¶ 26. It is clear that formal rules of evidence do not apply to administrative proceedings. McClinton v. Miss. Dep’t of Employment Sec., 949 So.2d 805, 808(6) (Miss.Ct.App.2006). Thus, an administrative agency may consider hearsay evidence in making its decision. See McDerment v. Mississippi Real Estate Comm’n, 748 So.2d 114, 121(22) (Miss.1999). “However, ‘uncorroborated hearsay testimony is insufficient to rise to the required level of substantial evidence.’ ” McClinton, 949 So.2d at 808(6) (quoting Miss. Employment Sec. Comm’n v. McLane-Southern, Inc., 583 So.2d 626, 628 (Miss.1991)).
¶27. Gully simply testified that Clark smelled like alcohol and that his alcohol blood level was 106.3 milligrams. Gully did not administer the breathalyzer test, and no confirmed alcohol test results were made available to the ALJ. During the hearing, The ALJ noted Peco’s lack of evidence, and the ALJ also mentioned Peco’s lack of evidence in his judgment. Gully’s testimony is uncorroborated hearsay evidence that does not rise to the level of substantial evidence necessary to support the board of review’s decision.
¶ 28. Alternatively, the majority argues that Clark could have obtained a copy of the test results and submitted it to the ALJ. Such an argument is disingenuous. That argument is intended to infer that Clark had the obligation to disprove the allegations of misconduct. That argument, whether made explicitly or implicitly, is completely contrary to the law. The burden of proving misconduct was placed squarely, firmly and unalterably upon Peco. See Little v. Miss. Employment Sec. Comm’n, 754 So.2d 1258, 1260 (¶¶9-10) (Miss.Ct.App.1999). While Peco raised questions about Clark’s condition, it wholly failed to meets its lawfully mandated burden of proof. Peco failed to prove misconduct by clear and convincing evidence.
¶ 29. Based on the lack of substantial evidence in the record, the circuit court’s judgment should be affirmed. For the foregoing reasons, I dissent.
MYERS, P.J., JOINS THIS OPINION.