IN RE VALIDATION OF MUNICIPAL BONDS OF NATCHEZ.

(Division B. May 13, 1940.)

[196 So. 258. No. 34204.]

818

Chas. **F**. **Engle**, of Natchez, and **W**. **E**. **Gore**, of Jackson, for appellant.

820

Gerard **H. Brandon,** of Natchez, for appellee.

824

Argued orally by **W. E. Gore** and **C. F. Engle**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

The City of Natchez took steps to validate an issue of $33,000 worth of municipal Waterworks bonds of the City of Natchez. C. F. Engle, a taxpayer and registered voter of the City of Natchez, filed objections to the validation in the chancery court, and from a judgment validating the bonds Engle appeals here.

The Mayor and Board of Aldermen of the City met at various times, and various orders affecting the issuance of the bonds were taken at these meetings. The objections filed in the chancery court to the bond issue originally filed set up in substance that the issuance of said bonds that appeared on the face of the proceedings was not authorized by proper or sufficient number of the qualified electors of the City of Natchez; that the record of the proceeding showed that there were 2541 qualified electors at the time of the election, but that only 604 of the voters voted in favor of the issuance of the bonds and that the said bonds carry the full faith and credit of the City of Natchez;

and that as a part of the scheme of issuing the bonds if the proceeds of the water works did not pay the interest in instalments due on the bonds as and when due that taxes would have to be levied to pay the same. It is further alleged that neither prior to the adoption of the ordinance authorizing the issuance of said bonds, nor subsequent thereto, was any investigation made to determine whether or not the revenues of the water works plant, in connection with which the said bond issue was intended to be used, were sufficient to take care of prior issues primarily chargeable against the revenues, or to take care, in addition to the said primary issue, of this issue, and no adjudication to that effect was made by the Mayor and Board of Aldermen. That the recital in said bonds that the same are chargeable against the revenues without investigation or adjudication as to the amount or sufficiency of the revenues amounts to nothing more than a pretext under which bonds of any amount could be placed as a burden upon the taxpayers without the consent of a majority vote of the qualified electors. That without authorization of the majority of all the qualified electors of the City of Natchez the Mayor and Aldermen have no authority to levy any additional taxes for the payment of bonds over and above the obligations now outstanding against the City of Natchez and have no authority, without the majority vote of all the qualified electors, to issue any further or additional bonds of the City or to obligate the City of Natchez to the payment of same or to pledge the full faith and credit of the City to pay the same.

It further alleged that the ordinance of January 1, 1940, making the changes in the ordinance attempting to authorize the issuance of said bonds adopted before the election recited in the said proceedings, was adopted after the said election and had not been authorized before or since its adoption by any election of any kind; that no bond as described in said ordinance was ever

authorized by the electors of Natchez. That the ordinance of January 1, 1940, was adopted at a special meeting of the Mayor and Board of Aldermen of the City, which meeting was not called and held in the manner provided by Section 2524 of the Code of 1930, nor in any manner provided by rules and regulations adopted by the Mayor and Board, and that everything done at said meeting is void;

(a) The call for said meeting did not specifically state that the same was called for the transaction of important business, and the determination of that fact in the call is jurisdictional.

(b) The notice of the special meeting was not served as required by law; that T. H. Radigan, now an alderman of the City who took the oath of office on January 1st, 1940, was served on December 30, 1939, at which time he was not an alderman of the City, not having taken the oath of office. That no call for any special meeting held after October 1st, 1939, for the consideration of matters connected with said bond issue was properly issued and served, nor did any of said calls contain the proper jurisdictional findings as to its being necessary or made for consideration of important business. That the record shows with respect to a recessed meeting of October 25, 1939, that the Board then recessed, but it does not appear to what date the Board recessed or what hour or for what purpose, and therefore any resolution or order adopted at the later meeting was void.

That the certificates attached to the validation proceedings purported to show that the proceedings of the Mayor and Aldermen of the City were improper and insufficient. That nowhere in said proceedings does it appear what amount the improvements were estimated to cost, nor does the necessity for same appear, nor that it was to the best interests of taxpayers of the City for the improvements to be made, nor was there any estimate or adjudication or statement whatever

as to the amount of revenue produced by the water works plant over and above the cost of operation, or as to the amount of net revenue which would be available for the payment and retirement of the bond issue primarily chargeable against same, nor was there any fixation of rates by the Board and Mayor as to reasonable and proper rates to be charged for the furnishing of water to the City; and that the present rates are highly excessive and greater than charged at other places of like size and situation as the City of Natchez; nor does any estimate appear anywhere in the minutes as to what proportion of improvements in the way of extending water mains are required and what the cost of same would be, nor what provision had been made for taking care of said extensions. It is further alleged that the City of Natchez is now bonded up to its full limit for bonds that it may issue without a vote of a majority of all the qualified electors, and is levying all the taxes it can levy to take care of the obligations incurred upon the authority of the majority of the qualified electors of the City. It was then alleged that the objector was a citizen, resident, householder and taxpayer of the City of Natchez, and in his own right has assessed against him property to the amount of $34,657.50, and, in addition thereto, pays taxes upon his home and other property which is assessed to his wife, and likewise contributes to the payment of taxes assessed against corporations on the property in the city.

The judge of the chancery court reset the hearing before the chancellor in vacation on February 23rd at Natchez, Mississippi, and from day to day until the matter should be disposed of.

On the 17th day of February, 1940, additional objections were filed by the appellant, in which the rates of taxation of the City for the year 1935 were set forth amounting to 33 mills, alleging that the resolution ordering an election for the issuance of the $33,000 bonds described the bonds radically different than the bonds

described in said ordinance on January 1, 1940, and there has never been submitted to the qualified electors any proposition to vote on the kind and character of bonds carrying the rate of interest set forth in said ordinance of January 1, 1940, and that in the absence of a vote of the majority of the qualified electors of the City, they had no right or authority to levy any taxes for the payment of either the principal or interest of the said $33,-000 issue herein sought to be validated. The additional objection also set forth that there were outstanding and unpaid at the time of the adoption of the ordinance other water works bonds, self-liquidating, and that the revenues of the water works department had been pledged to the payment of principal and interest of such bonds, setting forth five per cent bonds aggregating $19,000, and three per cent bonds to buy land and build a water and sewer plant aggregating $165,000, amounting to a total of $179,000.

It is further objected that the proceeds of the bond issue involved were intended to be used solely for the purpose of buying Diesel engines and electrical equipment for the operation of an electric plant to furnish power to the existing water works plants owned by the City of Natchez, and the issuance of same for the purpose designed is not authorized by law, and in any event certainly not authorized unless the proposition should be submitted to the qualified electors, and a majority of the qualified electors of the City vote in favor of such issuance.

That none of the ordinances adopted with reference to the issuance of said bonds contained a provision binding the City to fix the rates for water at an amount sufficient to pay and retire the principal and interest on the balance owing on the two outstanding bond issues, or for the payment and retirement of this issue, and the ordinances authorizing the bond issue of September 1, 1926, do not contain any provision requiring the fixation of rates in an amount sufficient to pay the expenses and

retire the bonds. That the issuance is for the purpose of installing an electric power plant to furnish power to the existing water works plant, and there has been no finding nor showing that the saving to be effected would be sufficient to retire said bonds in ten years or in any number of years. That this bond constitutes primarily a charge upon the taxpayers of the City, and there does not appear in the minutes of the Board anything relating to the cost of operation of the said electric power plant, nor anything with reference to the amount of net revenues that may be available to retire said bond after paying off existing bonds, nor any showing that would justify in any respect the issuance of any bonds for the purpose intended without first having the issue approved by a majority of the qualified electors of the City.

Section 2394 of the Code of 1930, and Section 27 of the Charter of the City, as amended by an act of the Legislature approved January 29, 1877, limit the taxing power of the City, and as shown in paragraph 3 of these additional objections, the millage already levied on the taxable property of the City of Natchez exceeds the amount allowed to be levied according to existing laws governing the City, and should the net revenues from the water works prove insufficient to take care of the obligations of the amount owing on two existing bond issues heretofore mentioned, it would require an additional levy to be made to take care of obligations arising from said issues and would impose an additional burden upon the taxpayers of the City of Natchez, which objector contends cannot be imposed in any event, if at all, without a majority vote of all qualified electors of the City of Natchez affirmatively voting for same.

That the bonds are proposed to be issued for the purpose of purchasing equipment for the furnishing of electric energy for the municipal water works plant and lighting same, and the minutes of the Mayor and Aldermen do not show any facts which would justify the belief that the saving to the City would be sufficient over a

period of ten years to equal the amount of said bonds and accrued interest; and on the contrary, there will be an additional burdeñ imposed upon the citizens and taxpayers of the City of Natchez. Statements were exhibited to the additional objections purporting to compare the rates for water service in Natchez with other cities, showing unfavorably to the City of Natchez.

It is also objected on hearing and argued here that some of the minutes of the Board were certified to by a deputy city clerk, and that there was no statute authorizing the city clerk to appoint a deputy. An ordinance was introduced on the hearing which authorized the city clerk to appoint a deputy, and the deputy actually served as such, and the name of the clerk was signed to the proceedings by the deputy clerk in certain of the minutes of the Board. A called meeting of January 1, 1940, referred to in the objections, recited:

"At a called meeting of the Mayor and Aldermen of the City of Natchez, Mississippi, held in the Municipal Building in said City at 12:30 o'clock P. M. on Monday, January 1, 1940, there were present:

"Mayor W. J. Byrne, Aldermen J. F. Button, R. E. Bost, T. H. Radigan and T. H. Fore, Gerard H. Brandon, City Solicitor, Mrs. J. L. Waggener, Deputy Tax Collector, Joseph P. Serio, City Marshal, W. H. Wilson, Street Commissioner and Johnnie Moody, Deputy City Clerk.

"The Call for said meeting was read as follows:

"Call for Special Meeting of the Mayor and Board of Aldermen of the City of Natchez, Mississippi.

"I, W. J. Byrne, Mayor of the City of Natchez, Mississippi, hereby call a special meeting of the Mayor and Aldermen of said City to be held at 12:30 o'clock P. M. on the 1st day of January, A. D. 1940, to consider the adoption of an ordinance to amend the ordinance adopted by said Mayor and Board of Aldermen on the 21st day of December, 1939, as same as recorded in pages 493, 494 and 495 of the current Minute Book, and on pages 240, 241, 242, and 243 of Ordinance Book E in the office of the

Clerk of said City, and to amend ordinance adopted by said Mayor and Aldermen on the 29th day of November, 1939, as same is recorded on pages 480, 481, 482, 483 and 484 of the current Minute Book and on pages 236, 237, 238 and 239 of Ordinance Book E in the office of the Clerk of said City, all on the subject of the issuance of $33,000.00 of waterworks bonds of the City of Natchez.''

A decree of the chancery court validating the bond issues among other things recited:

"The Court having heard all the evidence introduced by all parties and having examined the transcript of the proceedings of said Board in the matter of the issuance of said bonds; and the Court having taken this matter, cause, and proceeding under advisement until this date, it appears that said bonds were ordered issued and validated at the regular adjourned meeting of the Board held December 21, 1939, and January 1, 1940, certain changes were made in the bond ordinance; and the Court having heard and considered all objections to the validation of said bonds, holds that none of said objections are well taken and all of them are overruled.

"The transcript shows that all the proceedings of the Board in the matter of the issuance of said bonds were in strict accordance with the Constitution and Laws of the State of Mississippi, and pursuant to lawful resolutions, ordinances and proceedings of the Board, and the issuance was further authorized by the result of an election legally ordered and legally held on November 24, 1939, at the usual voting places in said City, at which election a majority of the qualified electors residing in said City and voting in said election voted for the issuance of said bonds.

"The bonds are to be issued for the purpose of being used in connection with and to supplement a grant by the United States Government through the Public Works Administration thereof in the amount of $27,000.00 to improve the Water Works department and plant of the

City of Natchez, Mississippi, including wells, treatment plant, power and pumping Diesel engines, generators, pipe lines and other equipment for the more efficient operation thereof, and to buy and install all necessary machinery and equipment and to do everything required in order to bring the water supply available for the citizens of said City and vicinity at present and in the future as determined by the Mayor and Board of Aldermen of said City through the Water Works Commissioners of said City for the more efficient and economical operation of the Water Works plant and system. The payment of these bonds is to be primarily chargeable to the Water Works plant of said City and shall be paid out of the revenues derived out of the operation of said Water Works plant and system of said City, by the said City under, by and through the Commissioners authorized to operate the plant and system of said City, subject to the prior charge against said revenue for payment of previously issued and outstanding bonds payable out of the same, but that nevertheless the full faith and credit of the City of Natchez are hereby pledged to the payment in full of the principal and interest of said bonds as same mature, and should the said revenue from the operation of said Water Works plant be insufficient to pay the interest on said bonds and redeem same as they mature, that then and in such event a tax levy will be made by the Mayor and Board of Aldermen of said City of Natchez in an amount sufficient to take care of any deficiency that may arise, etc.''

There are many features of the objections filed against the issuance of the bond issue that fade out or disappear with the proper construction of Chapter 136 of the Laws of 1938. On page 177, Laws of 1938, being a part of Chapter 136, after prescribing various features of bond elections, we find the following provision: ''Provided, that in any election for the purpose of issuing bonds for water and light purposes or for the construction of special improvements primarily chargeable to the property

benefited, or for the purpose of paying the city's proportion of any betterment program, a portion of which is primarily chargeable to the property benefited, then a majority of the electors voting in said election shall be sufficient to authorize the issuance of said bonds,'' etc. The provision quoted does not make it a necessary part of the requirement as to water and lights, that there should be a charge primarily made against the improvement or the plant or equipment or the proceeds thereof. The provision ''or for the construction of special improvements primarily chargeable to the property benefited,'' etc., refers to a different thing from water and lights and is set off by the word ''or;'' and the charge primarily made as to such improvements against the property is not applicable to the provision for the issuance of bonds for water and light purposes. Water and lights are so essential to the health, comfort, safety and convenience of the public that the City was not required to secure the approval of all the voters in the municipality, but merely a majority of those voting for or against the proposition in the election held for that purpose. It is true that the City did charge the proceeds of the utility being improved and benefited and made it a primary charge against the funds derived from that utility, and provided that if at any time it appeared that the proceeds so derived were insufficient to pay the interest and instalments due that the Board would levy a tax sufficient for such purposes, making the tax a general tax upon the municipality. This, of course, was valuable security to the bondholders, but was not a legal requirement for the construction and improvement and betterment of water works and light systems of the City. It would be possible to issue the bonds for these purposes without making the proceeds derived from the utility being constructed or improved or benefited a general charge upon the taxpayers of the City. This construction, it seems to us, is not only consistent with the wording of the provision, but is one which should be adopted

to secure to the inhabitants water and lights although a majority of the voters of the City might not vote. Therefore, in an election, those who are indifferent to the election to the extent that they do not go and vote are not entitled to control the result of those who vote in the election, and the result is obtained by the majority who vote in the election and not by a majority of all the voters of the municipality. With this construction, a principal part of the objections filed disappears, and the court was not in error in its holding in that regard.

As to the objection filed and stressed in the argument here that the deputy clerk's certificate to the minutes and ordinances involved was unauthorized and without authority of law and consequently void upon the theory that there was no statutory authority authorizing a clerk of a municipal board to have a deputy clerk, it is without merit, for the charter of the City of Natchez as contained in the Laws of 1877, Chapter 225, page 305 et seq., Section 5 thereof, provides: "That the municipal government of said city shall be vested in a mayor, eight aldermen, and assessor and collector of taxes, a treasurer, clerk, marshal and other *subordinate officers* (italics ours) as may be established by said mayor and aldermen."

The provision for the creation of subordinate officers is clear, and a deputy clerk is a subordinate officer authorized to be created by this section. The same general power is contained in the chapter on municipalities, Section 2408, which provides for power in the governing authority "to provide for the election of such municipal officers, other than those required by this chapter, as may be found necessary; to prescribe the duties and to fix the compensation of all officers and employees, and to require bonds with sureties for the performance of duties from all officers and employees." The acts performed by the deputy clerk were such as did not call for the exercise of discretion and personal judgment or discharge of any judicial functions; and it would be competent for an officer as to such clerical matters to select

someone to do the clerical part and to sign his name thereto, and when such act was done with the approval of the Mayor and Board of Aldermen it would be effective for the purpose which was sought to be accomplished. Furthermore, a deputy clerk was in possession of the office, recognized as such by the public, and constituted a de facto officer whose acts are valid, under Section 2899 of the Code, regardless of whether he was a de jure officer or not. See Code of 1930, Section 2899, and the cases annotated thereunder.

In reference to the point made that the notice of the meeting to be held on January 1, 1940, quoted above, it appears that the notice of the meeting as to one of the aldermen, T. H. Radigan, was served upon him after he was elected to the office, and his right to the office had fully accrued, and the only thing necessary at the time of the service of the notice was his taking the oath of office and qualifying. On the first day of January, 1940, Mr. Radigan acknowledged receipt of the notice, and, according to the minutes actually attended the meeting after becoming qualified as alderman, and actually voted for the proposition as shown by the minutes. The purpose of the notice requested was to give the officers and the Mayor and Aldermen notice of the time and place of the meeting so that they could attend and be informed of the proceedings then to be taken; and where, as here, the officer-elect signs an acknowledgment of the service of the notice and actually attends and participates in the meeting, all is accomplished that the notice was intended to accomplish. We think there is no merit in the proposition that because he had not then qualified he was not actually an alderman at the time of the service, for he was an alderman-elect who did qualify prior to the time of the meeting and did qualify and participate in the meeting. A different question would be presented had he not qualified prior to the meeting or had he not participated therein. There are, of course, times when notice

must be served upon the actual body, but such a question is not involved here.

We are also of the opinion that the call for the special meeting sufficiently indicated that business would be transacted at the meeting, and the purpose for which the meeting was called. We have examined all the objections presented and the contents of the record, but do not deem it necessary to set forth as herein indicated, and we find no reversible error in the validation proceedings. Consequently, the judgment of the court below is affirmed.

Affirmed.