911 So.2d 603 (2005)
William M. BEASLEY and Beasley Real Estate, LLC, Appellants
v.
Ed NEELLY, Bill Nesmith, Dick Hill, George M. Taylor, Smith Heavner, Nettie Y. Davis, Larry Cole, Perry Smith, Danny Barrows, and City Council of the City of Tupelo, Appellees.
No. 2004-CA-00458-COA.
Court of Appeals of Mississippi.
September 13, 2005.
*605 Richard Shane McLaughlin, Tupelo, attorney for appellants.
Guy W. Mitchell, III, Michael D. Chase, Tupelo, Gary L. Caranthan, attorneys for appellees.
Before BRIDGES, P.J., MYERS, and ISHEE, JJ.
BRIDGES, P.J., for the Court.
¶ 1. V.M. Cleveland filed, as owner of Tupelo Furniture Market, Inc. (hereinafter "TFM"), an application with the Department of Planning and Development for the City of Tupelo requesting a major conditional use permit for TFM to add 300,000 square feet to its commercial facility. The planning committee granted the conditional use a few weeks later.
¶ 2. William M. Beasley and Beasley Real Estate, LLC (hereinafter collectively referred to as "Beasley"), holding title to lots two and thirty-four in Oak Meadows Subdivision, respectively, in the immediate vicinity of TFM, appealed the decision granting the conditional use to the Tupelo City Council. The city council voted in favor thereof, so Beasley filed a bill of exceptions with the Circuit Court of Lee County. Following a hearing on said matter, the court ruled to affirm the decision of the city council.
¶ 3. Aggrieved by the lower court's decision, Beasley has appealed to this Court and presents the following three issues for our review:
I. WAS THE APPROVAL OF TUPELO FURNITURE MARKET'S CONDITIONAL USE APPLICATION SUPPORTED BY SUBSTANTIAL EVIDENCE?
II. MUST THE APPROVAL OF TUPELO FURNITURE MARKET'S CONDITIONAL USE APPLICATION BE REVERSED BASED ON THE FAILURE OF THE CITY COUNCIL TO SUPPORT SAID APPROVAL WITH SPECIFIC FINDINGS OF FACT?
III. MUST THE APPROVAL OF TUPELO FURNITURE MARKET'S CONDITIONAL USE APPLICATION BE REVERSED BASED ON THE FAILURE OF TUPELO FURNITURE MARKET TO OBTAIN THE REQUISITE MAJORITY CONSENT OF THE OAK MEADOWS HOMEOWNER'S ASSOCIATION?
Finding no error, we affirm.

FACTS
¶ 4. In 1993, TFM applied for and was subsequently granted by the City of Tupelo a major conditional use, permitting TFM to expand its operation by building on property zoned residential, or "R1-L." The conditional use, however, was only permitted provided that TFM complied with the explicit conditions attached to the permit, which specified, in pertinent part, "[t]hat no industrial or commercial building would extend beyond [a] designated 1500 ft. mark as established by . . . [a] boundary line survey." The proposed development was in the immediate vicinity of property owned by Beasley in the Oak Meadows Subdivision, which has a homeowner's association known as the Oak Meadows Homeowner's Association. The permit also provided that all conditions included therein "would be placed as permanent restrictions on the entire development, and could only be modified, altered, or changed by consent of the majority of *606 the Oak Meadows Homeowner's Association.. . ."
¶ 5. On March 17, 2003, V.M. Cleveland filed, on behalf of TFM, an application with the Department of Planning and Development requesting another major conditional use so that TFM could expand again, adding this time 300,000 square feet to the rear of the main structure with appropriate parking and landscaping. After receiving the application materials, the Tupelo Planning Committee arranged for and sent out notification of a public hearing, pursuant to Tupelo Development Code § 5.4.6., for April 7, 2003. Prior thereto, the planning committee staff produced a detailed analysis, reconciling TFM's application with Tupelo Development Code § 5.4.7, which set forth the standards for such application as follows:
The Director of Planning and Development shall not approve the proposed minor conditional use nor shall the Planning Committee or City Council approve the proposed major conditional use and accompanying major site plan, unless and until they make the following findings, based on evidence and testimony received at the public hearing or otherwise appearing in the record of the case:
(1) That the proposed use or development of the land will not materially endanger the public health or safety;
(2) That the proposed use is reasonably necessary for the public health or general welfare, such as by enhancing the successful operation of the surrounding area in its basic community functions or by providing an essential service to the community or region;
(3) That the proposed use or development of the land will not substantially injure the value of adjoining or abutting property;
(4) That the proposed use or development of the land will be in harmony with the scale, bulk, coverage, density, and character of the area or neighborhood in which it is located;
(5) That the proposed use or development of the land will generally conform with [the] Comprehensive Plan and other official plans adopted by the City;
(6) That the proposed use is appropriately located with respect to transportation facilities, water supply, fire and police protection, waste disposal and similar facilities;
(7) That the proposed use will not cause undue traffic congestion or create a traffic hazard.
¶ 6. The expansion proposed by TFM in its application would have violated the boundary line conditions stipulated in the 1993 permit; therefore, the proposal, pursuant to said conditions, was put to a vote of the Oak Meadows Homeowner's Association. Accordingly, every member was sent a ballot, and ballots were returned by 64% of those members. The city's planning director, Pat Faulkner, subsequently confirmed with Cecil Overton, an officer of the Homeowner's Association, that the result of the poll of residents was 70% favorable to the proposed expansion. At the April 7 public hearing, the planning committee voted, after reviewing all the evidence and hearing comments from the general public in attendance, to approve the major conditional use for TFM.
¶ 7. Beasley, who owned property in Oak Meadows and was a member of the Homeowner's Association, appealed the approval to the Tupelo City Council. The city council voted to approve the major conditional use permit, so Beasley filed a bill of exceptions with the Circuit Court of Lee County. However, following a hearing on the matter, the court affirmed.

*607 LAW AND ANALYSIS
¶ 8. Zoning issues that concern whether to grant or deny a request for a conditional use, or special exception, are adjudicative, as opposed to legislative, in nature; therefore, on appeal, the reviewing courts must determine whether the applicant proved by a preponderance of the evidence that all conditions required for the requested conditional use were satisfied. Barnes v. DeSoto County Bd. of Supervisors, 553 So.2d 508, 510-11 (Miss. 1989). The standard for reviewing a decision of a municipal authority, accordingly, is the same as when reviewing the decision of an administrative agency or board, and thus, the reviewing court may only disturb the decision of the municipal authority upon finding that the decision "was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency's scope or powers; or violated the constitutional or statutory rights of the aggrieved party." Wilkinson County Bd. of Supervisors v. Quality Farms, Inc., 767 So.2d 1007, 1010(¶ 8) (Miss.2000) (quoting Bd. of Law Enforcement Officers Standards and Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996)). Substantial evidence, according to the Mississippi Supreme Court, is defined as relevant evidence that reasonable minds might accept as satisfactory to support a conclusion or, stated otherwise, that which constitutes "more than a `mere scintilla' of evidence." Hooks v. George County, 748 So.2d 678, 680(¶ 10) (Miss.1999) (quoting Johnson v. Ferguson, 435 So.2d 1191, 1195 (Miss. 1983)).

I. SUBSTANTIAL EVIDENCE
¶ 9. Beasley maintains that neither the planning committee nor the city council was presented with evidence sufficient to satisfy each of the criteria enunciated in section 5.4.7. Beasley contends that the most notable evidentiary insufficiencies regarding the criterion concern whether the proposed expansion was (a) reasonably necessary for the general welfare or health of the public; (b) in harmony with the general character of the surrounding neighborhoods; and (c) in general conformity with the city's official plans.
¶ 10. The City contends Beasley failed to properly preserve this issue for appeal, claiming that he neglected to specifically state in his petition to the city council that the decision of the planning committee was not supported by substantial evidence. We, however, disagree. While Beasley did not expressly insert the phrase "substantial evidence" anywhere in his petition for appeal, he did challenge the committee's conclusion as to each of the aforementioned criterion, and the argument he now advances mirrors that which he presented to the planning committee, the city council, and the circuit court. Furthermore, the argument that the city's decision is unsupported by substantial evidence is explicitly raised in the bill of exceptions to the circuit court. Mississippi's long-standing law declares that the bill of exceptions serves as the record on appeal; therefore, this Court is not now barred from considering this issue. Miss. Code Ann. § 11-51-75 (Rev.2002); Van Meter v. City of Greenwood, 724 So.2d 925, 928(¶ 7) (Miss.Ct.App.1998); Falco Lime, Inc. v. the Mayor and Aldermen of the City of Vicksburg, 836 So.2d 711, 727(¶ 77) (Miss.2002).
¶ 11. We conclude, however, that Beasley's argument as to this issue is meritless. The planning committee's staff analysis demonstrates that balanced evidentiary considerations were afforded each of the aforementioned criterion, for the discussion therein evaluated the burdens and benefits that TFM's proposed expansion would potentially impose on the surrounding *608 area. Contrary to Beasley's position concerning the general welfare or public health of the community, the staff analysis concluded that TFM contributes substantially to the general welfare, prosperity, and tax base to the region. The staff analysis stated that there would be harmony with the neighborhood if the new building would be hidden or mitigated, and thus TFM's application for the conditional use met this criteria as it contained a site plan that provided for a landscaped buffer of berm and trees that would prevent the visibility of the building from the surrounding area. Additionally, TFM offered to be contractually bound to maintain the berm to conceal the new building, which the staff analysis noted would virtually eliminate the visual impact of the project. Furthermore, the staff analysis determined that the landscaped buffer would conform with the city's comprehensive plan, and thus, the planning committee approved the conditional use based on the submitted site plan, which provided for the landscaped buffer.
¶ 12. An appellate court sitting in review of findings of fact affords deference to an administrative decision in which the decision to grant or deny a variance is at issue, and if the decision can be viewed as "fairly debatable," it will not be disturbed on appeal. Biloxi v. Hilbert, 597 So.2d 1276, 1280 (Miss.1992). The minutes of the city council summarized the testimony of citizens voicing their opinions in support of, and in protest to, the proposed expansion. Supporting reasons for the expansion included providing space to display products of growing furniture companies, allowing TFM to provide more area for parking, and that the proposed expansion is reasonably necessary for the general welfare by enhancing the successful operation of the surrounding area and provide an essential service to the community by retaining furniture companies at TFM and accompanying employment in the community. Viewing the evidence supporting the city council's decision in light of the seven factors specified in section 5.4.7, it is obvious that while Oak Meadows subdivision is impacted; however, the property in question is adjacent to TFM, and the new facility would benefit the business and welfare of the community. Based on the foregoing reasons, it is apparent that the city's decision to grant the conditional use can be viewed as "fairly debatable", and therefore, we will afford deference to the decision. The argument advanced by Beasley simply emphasizes the negative implications associated with the requested conditional use, and without more, he has failed to show that the city's approval thereof was not supported by the requisite substantial evidence. Furthermore, finding that the approval was supported by substantial evidence, we also find that the decision was not arbitrary nor capricious, beyond the agency's scope or powers, and did not violate Beasley's constitutional or statutory rights.

II. SPECIFIC FINDINGS OF FACT
¶ 13. Section 5.4.7, as quoted above, prohibits the approval of any proposed major conditional use "unless and until" findings are produced regarding the seven criteria prescribed therein. Beasley maintains that the city council failed to make any findings of fact; therefore, the approval of TFM's application was erroneous.
¶ 14. Although municipal authorities "should" detail their findings when granting or denying a conditional use permit, the Mississippi Supreme Court has held that the failure to make explicit findings of fact, in and of itself, is an insufficient basis for reversal and the decision rendered in such regard is "tantamount to a finding of *609 fact." Barnes, 553 So.2d at 511; see also Citizens Ass'n for Responsible Dev., Inc. v. Conrad Yelvington Distributors, Inc., 859 So.2d 361, 367-68 (¶¶ 20-21) (Miss.2003); Faircloth v. Lyles, 592 So.2d 941, 945 (Miss.1991) (while recognizing the desirability of specific findings by a zoning authority on each considered issue, the courts will not reverse for a lack of such specificity where a factual basis for the action is supported by the record). The record in this matter, as previously discussed, is replete with factual basis supporting the decision of the city council; therefore, we can find no reversible error.

III. MAJORITY CONSENT
¶ 15. Beasley maintains that the conditional use application was approved in error because only 44.8% (70% of the 64% that returned ballots) of the total membership of the Homeowner's Association voted in favor of the proposed expansion. Beasley claims that, under the conditions of the 1993 conditional use permit, TFM's proposed conditional use could only be approved, in part, upon the "consent of the majority of the Oak Meadows Homeowner's Association." (emphasis added). Beasley argues that TFM's application was approved by only a majority of those members that returned ballots and not the majority of all members. Accordingly, Beasley contends that TFM failed to obtain the requisite majority consent of the Homeowner's Association.
¶ 16. The Mississippi Supreme Court has long held that when "construing a zoning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities." Columbus & Greenville Ry. Co. v. Scales, 578 So.2d 275, 279 (Miss.1991) (citations omitted). Furthermore, when a provision of an official enactment by a municipality is subject to more than one interpretation, "the best interpretation of what the wording in the ordinance means is the manner in which it is interpreted and applied by the enacting and enforcement authorities." Faircloth, 592 So.2d at 945 (citation omitted). On April 7, 2003, Pat Falkner, the city planning director, informed the planning committee by memorandum of the 70% vote in favor of the expansion, which he stated "[s]hould serve to address the condition made on the 1993 approval that the homeowners association approval is required for further expansion." Relying on the results, the planning committee and city council subsequently concluded that the consent requirement outlined in the 1993 conditional use permit had been satisfied. Furthermore, the Mississippi Supreme Court has held that "[i]n an election, those who are indifferent to the election to the extent that they do not go and vote are not entitled to control the result of those who vote in the election, and the result is obtained by the majority who vote in the election and not by a majority of all the voters of the municipality." In re Validation of Municipal Bonds, 188 Miss. 817, 835, 196 So. 258, 263 (1940). Therefore, showing deference to the interpretation of the consent provision as construed by the municipal authorities, we cannot find the issue advanced herein as a basis for reversal.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
MYERS AND ISHEE, JJ. CONCUR. IRVING, J., CONCURS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY ISHEE, J. KING, C.J., DISSENTS WITH SEPARATE *610 WRITTEN OPINION, JOINED BY LEE, P.J. CHANDLER, GRIFFIS AND BARNES, JJ., NOT PARTICIPATING.
IRVING, J., Concurring:
¶ 18. While I agree with the majority opinion, I write separately to comment on a matter that neither the majority opinion nor the dissenting opinion addresses, and, that is, whether the Appellants have standing to challenge the alleged failure of the City of Tupelo to comply with the provision in the 1993 major conditional use permit granted to Tupelo Furniture Market (TMF). The fact that TMF's proposed new expansion would violate the boundary line conditions stipulated in the 1993 major conditional use permit, did not, in my opinion, operate as a license for any member of the Oak Meadows Subdivision to enforce compliance.
¶ 19. While the 1993 major conditional use permit provides that all conditions contained therein would be permanent restrictions on the entire development, it also provided that the restrictions could only be modified, altered, or changed by the consent of the majority of the Oak Meadows Homeowner's Association. Clearly, the restrictions which were placed in the 1993 major conditional use permit were placed there for the benefit of the members of the Oak Meadows Homeowner's Association collectively, not individually. There is nothing in the record to indicate that either one or both of the Appellants constitute a majority of the Oak Meadows Homeowner's Association, nor is there anything in the record to indicate that either or both of the Appellants have been authorized to speak or act for the Association. Therefore, it seems to me that while the Appellants have standing to challenge any alleged noncompliance with Tupelo Development Code § 5.4.7, any challenge based on noncompliance with the specific conditions of the 1993 major conditional use permit would have to be brought by a majority of the members of the Oak Meadows Homeowner's Association. Since the Appellants do not constitute a majority of the Oak Meadows Homeowner's Association, I do not believe they have standing to lodge a challenge of noncompliance with the conditions placed in the 1993 major conditional use permit.
ISHEE, J., JOINS THIS SEPARATE WRITTEN OPINION IN PART.
KING, C.J., Dissenting:
¶ 20. I dissent from the majority opinion herein. I find merit in Beasley's third issue, and would therefore reverse and render. That issue as stated by Beasley is, "Must the approval of Tupelo Furniture Market's Conditional Use Application be reversed based on the failure of Tupelo Furniture Market to obtain the requisite majority consent of the Oak Meadows Homeowner's Association?"
¶ 21. The relevant language regarding the approval of the conditional use by the Oak Meadows Homeowner's Association, as set forth in the record, is as follows: That these conditions would be placed as permanent restrictions on the entire development, and could only be modified, altered, or changed by consent of the majority of the Oak Meadows Homeowner's Association and which may be enforced by said association. This language is clear and unambiguous, and contrary to the actions of the city council, the circuit court, and this Court requires no interpretation.
¶ 22. The majority apparently sees ambiguity in the emphasized language, and thus proceeds to interpret it. As a validation of its interpretation, the majority, in paragraph 16, states, "Furthermore, when a provision of an official enactment by a municipality is subject to more than one interpretation, `the best interpretation of *611 what the wording in the ordinance means is the manner in which it is interpreted and applied by the enacting and enforcement authorities.' Faircloth v. Lyles, 592 So.2d at 945." While the majority has correctly quoted the law, it has in my judgement misapplied the law.
¶ 23. The language which is the subject of the majority's application of Faircloth is "and could only be modified, altered, or changed by consent of the majority of the Oak Meadows Homeowner's Association.. . ." This language is clear and unambiguous, and therefore requires no interpretation.
¶ 24. The majority opinion continues its misapplication of the law by also stating in paragraph 16, "Furthermore, the Mississippi Supreme Court has held that `[i]n an election, those who are indifferent to the election to the extent that they do not go and vote are not entitled to control the result of those who vote in the election, and the result is obtained by the majority who vote in the election and not by a majority of all the voters of the municipality.' In re Validation of Municipal Bonds of Natchez, 188 Miss. 817, 835, 196 So. 258, 263 (1940)."
¶ 25. The court's decision in In re Validation of Municipal Bonds of Natchez must be read in light of the nature of the case. This was a case objecting to the validation of bonds being issued by the City of Natchez. These bonds were being issued under a statute, the relevant portion of which stated, "Provided, that in any election for the purpose of issuing bonds for water and light purposes or for the construction of special improvements primarily chargeable to the property benefitted, or for the purpose of paying the city's proportion of any betterment program, a portion of which is primarily chargeable to the property benefitted, then a majority of the electors voting in said election shall be sufficient to authorize the issuance of said bonds, etc. . . ." Id., 188 Miss at 833-34, 196 So. at 262 When placed in proper context, this case does not support the majority decision.
¶ 26. Contrary to the majority's representation, there was no legal requirement that Beasley go out and vote against the conditional use. Instead, under the plain language of the agreement, the burden was placed upon the Tupelo Furniture Market to obtain the consent of a majority of the members of the Oak Meadows Homeowner's Association for its conditional use. It did not obtain the consent of the majority of the members of the Oak Meadows Homeowner's Association. For this reason, I would reverse and render.
LEE, P.J., JOINS THIS OPINION.