# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01506-COA

**CHECK INTO CASH OF MISSISSIPPI INC.**                    **APPELLANT**

**v.**

**CITY OF JACKSON, MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/2013 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES A. PEDEN JR. |
| ATTORNEYS FOR APPELLEE: | GREGORY RONELL BURNETT |
| | GAIL WRIGHT LOWERY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | AFFIRMED DECISION TO DENY USE-PERMIT APPLICATION |
| DISPOSITION: | REVERSED AND RENDERED: 03/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND ISHEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Check Into Cash of Mississippi Inc. ("CICM") appeals the City of Jackson's decision to deny a use permit. The use permit would allow CICM to engage in the title-pledge business at its current payday-loan location. This Court finds reversible error as to the first issue and renders a judgment in favor of CICM.

## FACTS

¶2.     Check Into Cash, Inc., is a consumer-financial-services company. Its primary

business is payday advances.[1]  In exchange for money, a payday advance accepts the customer's personal check and agrees to defer presentment until after the expiration of a short holding period.  Check Into Cash has numerous locations throughout the southeastern United States.  In addition to payday advances, Check Into Cash also provides its customers installment, title, and pawn loans; check-cashing services; prepaid debit cards; bill-payment services; wire-transfer services; and ATM access at its local offices.

¶3.     At its locations in Mississippi, Check Into Cash does business through its subsidiary, CICM.   CICM operates in twenty-seven locations in twenty-four cities throughout Mississippi.  CICM operates three locations in the City of Jackson.

¶4.     Since 2001, CICM has operated location at Metro Junction Shopping Center, 4896 Highway 18 West, Jackson, Mississippi.  At this location, CICM is authorized to make payday advances.  CICM sought to expand its services and offer title-pledge services.[2]  On May 19, 2011, the Commissioner of the Mississippi Department of Banking and Consumer Finance issued CICM a license, under the Mississippi Title Pledge Act, to offer title-pledge

---

[1] CICM's payday-advance services must comply with the Mississippi Check Cashers Act, Miss. Code Ann. § 75-67-501 to -537 (Rev. 2013 & Supp. 2014); its title-pledge services must comply with the Mississippi Title Pledge Act, Miss. Code Ann. § 75-67-401 to -449 (Rev. 2009); and it is regulated by the Mississippi Department of Banking and Consumer Finance, which issues separate licenses for payday advances and for title-pledge services at each location.

[2] A title-pledge service involves loaning money to a borrower, who pledges his title to personal property, usually an automobile, as security for the loan.  The loan agreement is a thirty-day written agreement in which the amount of money loaned in consideration of the title pledge may not exceed $2,500. A title-pledge lender may contract for and receive a title-pledge service charge, in lieu of interest and all other charges, not to exceed twenty-five percent of the principal amount, per month, advanced in the title-pledge transaction.  *See* Miss. Code Ann. §§ 75-67-403, 75-67-413, & 75-67-415(f) (Rev. 2009).

2

loans at this location.

¶5.     In 2006, the City of Jackson amended its zoning ordinance.  Based on the amended ordinance, CICM's location is in the C-3 General Commercial District.  Before the amendment, title-pledge-loan businesses were not permitted.  The amendment allowed title-pledge lending through a use-permit process.  Jackson Zoning Ordinance § 702.05.l(a).21.  Similarly, section 702.05.l(a).11 allows payday-advance/check-cashing operations through the use-permit process in the C-3 General Commercial District.  However, the amendment allowed CICM's existing payday-advance operation to continue as a lawful nonconforming use without a use permit.

¶6.     Section 202.175 defines a "use permit" as "[a] use which is not permitted by right but which is allowed in certain zoning districts, usually subject to conditions . . . as regulated by the provisions of this Ordinance."  Based on section 1701.02-A, the use-permit requirements are as follows:

> When considering application for use permits, the City Council shall consider the extent to which:
>
> 1.     The proposed use is compatible with the character and development in the vicinity relative to density, bulk and intensity of structures, parking, and other uses;
>
> 2.     The proposed use will not be detrimental to the continued use, value, or development of properties in the vicinity;
>
> 3.     The proposed use will not adversely affect vehicular or pedestrian traffic in the vicinity;
>
> 4.     The proposed use can be accommodated by existing or proposed public services and facilities, including, but not limited to, water, sanitary sewer, streets, drainage, police and fire protection, and schools;

5. The proposed use is in harmony with the Comprehensive Plan;

6. The proposed use will not be hazardous, detrimental, or disturbing to present surrounding land uses due to noises, glare, smoke, dust, odor, fumes, water pollution, vibration, electrical interference, or other nuisances.

¶7. When CICM decided to add title-pledge-loan services at this location, CICM contacted the City of Jackson's zoning administrator. The administrator confirmed that the CICM location was zoned C-3 General Commercial District, and a use permit was required to add the title-pledge-loan service.

¶8. CICM filed its Application for a Use Permit on June 10, 2011. CICM attached several documents to the application: a corrective warranty deed containing a legal description of the tract incorporating the subject property; three plats showing the exact location and details of the existing site in Metro Junction Shopping Center (just to the north of the Walmart store, to the east of Chadwick Drive, and to the southeast of Highway 18 West); a certificate from the Mississippi Department of Banking and Consumer Finance certifying that CICM was licensed to provide title-pledge services at this location; and a tax map, an ownership map, and a land-roll detail for the subject property and surrounding area. Also, pursuant to section 1703.02.4-A of the zoning ordinance, CICM sent appropriate notice letters by certified mail, return receipt requested, to the owners of all tracts of land located within 160 feet of the subject property and to all neighborhood organizations registered with the Department of Planning and Development having geographic boundaries within 1,000 feet of the subject property.

¶9. The staff of the City Planning Board prepared a "Report to the Planning Board," dated

July 18, 2011. The report included the following:

> STAFF RECOMMENDATION: Staff recommends the approval of the requested Use Permit to allow a Title Pledge Service to operate at the already existing Check Into Cash located within the Metro Junction Shopping Center located at 4896 Highway 18 West based on the following:
>
> 1. Staff is of the opinion that the proposed Use Permit is compatible with the surrounding area zoning C-3 (General) Commercial District. Also, because its location is in an existing shopping center and would not adversely affect vehicular or pedestrian traffic. Additionally, the proposed use would not be detrimental to the continued use, value or development of properties in the vicinity[,] and it can be accommodated by existing infrastructure.
>
> PROPOSED MOTION: To recommend approval of a use permit to allow a Title Pledge Service to operate at an already existing Check Into Cash establishment located at 4896 Highway 18 West.

¶10. The City Planning Board conducted a public hearing on the permit application on July 27, 2011. Joseph Warnsley, the senior zoning planner who compiled the report, gave the Planning Board an overview of the physical location, along with staff recommendations for the permit application. The overview included maps showing that the property was in the middle of a commercially developed area, diagrams and photographs of the CICM building, and the requirements for obtaining a use permit. Warnsley recommended that the CICM's application should be approved because it met the requirements for a use permit.

¶11. At the hearing, Bruce Long spoke on behalf of CICM. Long stated that CICM sought the use permit so that all of CICM's locations, throughout the state, could advertise and offer the same services, including title-secured loans.

¶12. Next, Genny Seeley spoke on behalf of the Association of South Jackson Neighborhoods. Seeley stated that she had lived in the South Jackson area over forty years.

She sent out an email survey to residents explaining that "there was already an existing check cashing business there, and that they were just wanting to add an additional service, which is a title pledge loan service." She also said, "I got 28 responses back from residents in South Jackson. . . . There were 25 residents that were against it, and there are three residents who were in favor of it." Seeley stated that she took a "straw poll" of thirty-seven people who participated in a community meeting, some of whom also participated in her email survey. Seeley then said, "we had 22 of 37 residents who participated there that were against it, and there were none who would raise their hands that they were in favor of it." Seeley also said:

> I want to provide you with a map that is showing . . . the number of title pledge loan services already available in South Jackson. . . . On this map, as you can see, I believe that there are a total of nine . . . business[es] where this service is available to our South Jackson residents. And if you will notice, there is already an existing business not far down Highway 18 that already offers this service to the residents of South Jackson. In conclusion, I would just say that if the reason for issuing a permit is . . . for there being shown a need for this particular change, then I would just ask you to look at this map. And . . . also, you have a list of businesses there. . . . I would just ask you to consider whether there is a need for an additional business like this.

¶13. In response, Long explained that there was competition for title-pledge-loan services just like there was competition among the several hamburger-restaurant locations in the area. He added that CICM's current customers would be benefitted by being able to transact their title-loan needs at the same place they cashed their checks. He pointed out that the CICM location looks like a bank, rather than having bullet-proof glass, and that their customers would be more comfortable doing business in a facility that blended into the surrounding businesses.

¶14. At the conclusion of the hearing, a member of the City Planning Board made a motion

6

to deny CICM's use-permit application. The motion passed, with eight members voting for the motion and one member voting against the motion.

¶15. By letter dated July 28, 2011, Interim Zoning Administrator Ester L. Ainsworth advised CICM and Seeley of the City Planning Board's decision. The letter instructed CICM how to appeal the decision. It also set a hearing for an appeal of the decision for consideration at the City Council meeting on September 19, 2011.

¶16. On August 4, 2011, CICM appealed the decision. On September 19, 2011, the City Council considered CICM's appeal at its regular zoning meeting. The City Council entered an order that denied the application, which stated:

> WHEREAS, the Council, after having considered the matter, is of the opinion that a change in the regulations so as to permit the use of said property for said purpose will adversely affect the surrounding properties, or otherwise be detrimental to the public welfare.

The City Council denied CICM's application by a four-to-two vote, with one member absent.

¶17. CICM appealed the City Council's decision to the Hinds County Circuit Court. On September 29, 2011, CICM filed a Bill of Exceptions and a Notice of Appeal. On August 5, 2013, the Hinds County Circuit Court affirmed the decision and dismissed the case.[3] It is from this decision that CICM now appeals.

**ANALYSIS**

---

[3] CICM also appealed the decision to deny a separate application for a use permit to offer title-pledge loans at its location located in Ridgewood Court in Jackson. However, in this appeal, Hinds County Circuit Judge William Gowan reversed and rendered the City of Jackson's decision. This judgment has not been appealed by the City of Jackson. As a result, CICM is allowed to offer title-pledge services at Ridgewood Court but not at Metro Junction Shopping Center.

7

¶18.    In this appeal, CICM has raised three issues.  First, CICM argues that the City's decision was arbitrary, capricious, and not supported by substantial evidence.  Second, CICM argues that the City's zoning administrator failed to submit the entire record to the City Council.  Third, CICM argues that the City's zoning administrator failed to publish proper notice before the City Council hearing.  Because we find the first issue to be determinative, we do not address the remaining issues.

¶19.    CICM argues that the application presented the evidence necessary to comply with the requirements for a use permit in section 1701.02-A of the Zoning Ordinance.  CICM challenges the City Council's order that denied the use permit.  CICM contends that the City Council did not make any findings of fact to support of its conclusion that the grant of the use permit "will adversely affect the surrounding properties, or otherwise be detrimental to the public welfare."

¶20.    We begin with the standard of review.  We will reverse a zoning authority's decision only if that decision was arbitrary, capricious, discriminatory, illegal, or not supported by substantial evidence.  *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1280 (Miss. 1992).  The Mississippi Supreme Court has held:

> Unlike decisions to zone or re-zone, which are legislative in nature, decisions on request for special exceptions are adjudicative, and a reviewing court subjects such decisions to the same standard as is applied to administrative agency adjudicative decisions.  Therefore, this appeal is subject to the following standard of review: The decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency's scope or powers; or violated the constitutional or statutory rights of the aggrieved party.

*Mayor & Bd. of Aldermen of Prentiss v. Jefferson Davis Cnty.*, 874 So. 2d 962, 964 (¶6)

(Miss. 2004) (internal citations omitted).

¶21.    As a result, CICM has the burden "to prove by a preponderance of the evidence that they have met the elements/factors essential to obtaining the conditional use permit." *Barnes v. Bd. of Sup'rs, DeSoto Cnty.*, 553 So. 2d 508, 511 (Miss. 1989); *see also Perez v. Garden Isle Cmty. Ass'n*, 882 So. 2d 217, 220 (¶7) (Miss. 2004). This Court must review the record to determine whether the City's decision was supported by the required substantial evidence. *See Barnes,* 553 So. 2d at 511; *Favre v. Hancock Cnty. Bd. of Sup'rs*, 52 So. 3d 463, 465 (¶5) (Miss. Ct. App. 2011). Substantial evidence is defined as "relevant evidence that reasonable minds might accept as satisfactory to support a conclusion . . . ." *Beasley v. Neelly*, 911 So. 2d 603, 607 (¶8) (Miss. Ct. App. 2005) (citations omitted).

¶22.    The use-permit requirements, in section 1701.02-A, provide:

When considering application for Use Permits, the City Council shall consider the extent to which:

1.      The proposed use is compatible with the character and development in the vicinity relative to density, bulk and intensity of structures, parking, and other uses;

2.      The proposed use will not be detrimental to the continued use, value, or development of properties in the vicinity;

3.      The proposed use will not adversely affect vehicular or pedestrian traffic in the vicinity;

4.      The proposed use can be accommodated by existing or proposed public services and facilities, including, but not limited to, water, sanitary sewer, streets, drainage, police and fire protection, and schools;

5.      The proposed use is in harmony with the Comprehensive Plan;

6.      The proposed use will not be hazardous, detrimental, or disturbing to present surrounding land uses due to noises, glare, smoke, dust, odor,

9

fumes, water pollution, vibration, electrical interference, or other nuisances.

¶23. CICM's application offered evidence that the proposed use of the property would comply with all of the elements in section 1703.02.4-A. The City Council apparently concluded that the proposed use of the property would violate the second element. Thus, we must determine whether there was substantial evidence to support the City Council's finding that the use permit "will adversely affect the surrounding properties, or otherwise be detrimental to the public welfare."

¶24. The only possible evidence in the record that could support this finding is Seeley's testimony before the City Planning Board. However, her testimony does not support the finding. Seeley testified that she and other South Jackson residents believed that there were enough title-loan businesses in the area to meet the needs of the residents. She did not testify that the proposed use would be detrimental to the continued use, value, or development of properties in the vicinity. In other words, she said there were enough title-loan businesses in the area, and she did not think another one was needed.

¶25. Evidence of public need is different than evidence that the proposed use would "be detrimental to the continued use, value, or development of properties in the vicinity." Jackson Zoning Ordinance § 1703.02.4-A(2). In fact, evidence of public need is only relevant if CICM sought to rezone the property. *See Childs v. Hancock Cnty. Bd. of Sup'rs*, 1 So. 3d 855, 860 (¶13) (Miss. 2009); *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1280 (Miss. 1992); *Woodland Hills Conservation Ass'n v. City of Jackson*, 443 So. 2d 1173, 1182 (Miss. 1983).

¶26. To obtain a use permit, the applicant does not have to establish that there is a public need for the special use. Instead, the applicant need only establish that it has met the elements and factors necessary to obtain the use permit. *See Barnes*, 553 So. 2d at 511. Here, CICM met its burden of proof and offered relevant evidence of the requirements of section 1703.02.4-A(2) of the zoning ordinance.

¶27. We find that there is no relevant evidence in the record that would support the City Council's finding and the denial of the use permit. The fact that some in the community believe that an additional title-loan business in the area was not needed was an argument in favor of limiting competition in the area. But the Mississippi Supreme Court has long held that "the purpose of zoning is not to limit or restrict competition, and a zoning ordinance cannot be used to control competition." *Fowler v. City of Hattiesburg*, 196 So. 2d 358, 361 (Miss. 1967) (citation and internal punctuation omitted); *see also Coleman v. Southwood Realty Co.*, 271 So. 2d 742, 744 (Miss. 1973) ("[T]he purpose of the zoning of property is not to restrict competition.").

¶28. Therefore, because we find the City of Jackson's decision to deny the permit was not supported by substantial evidence, we also find that the decision was arbitrary and capricious. A "decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone. An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Ryals v. Bd. of Sup'rs of Pike Cnty.*, 48 So. 3d 444, 450 (¶22) (Miss. 2010) (citations omitted).

¶29. Accordingly, the judgment of the Hinds County Circuit Court is reversed, and a

11

judgment is rendered to grant CICM the use permit requested.

¶30.     **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**